Paul WILSON and Julie Cooper, Personal Representative of the Estate of Leroy Cooper, Deceased, Appellants, Cross-Appellees,

v.

STATE of Alaska, Appellee, Cross-Appellant.

Nos. 6206, 6239.

Supreme Court of Alaska.

Sept. 9, 1983.

John S. Hedland, James D. Grandjean, Hedland, Fleischer & Friedman, Anchorage, for appellants/cross-appellees.

Sanford M. Gibbs, Charles Hagans, Hagans, Brown & Gibbs, Anchorage, for appellee/cross-appellant.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

In this case appellants, Wilson and Cooper, urge this court to review an instruction and several evidentiary rulings by the trial court in a jury trial dealing with the issue of whether the state was liable for negligence by virtue of a negligent inspection.

The jury held that the state was not liable because the inspection was not negligently conducted. We affirm.

## I

## FACTS

On April 8, 1976, there was an explosion on the King Salmon platform in the Upper Cook Inlet which caused the death of LeRoy Cooper and injured Paul Wilson, both of whom were employees of Atlantic Richfield Company (ARCO). The explosion was caused by an accumulation of methane gas.

The explosion occurred on the lower deck of the platform in the area near the Fuller compressor. The compressor ran on methane gas and because of this, the room was classified as a hazardous area for National Electrical Code (NEC) purposes. Located on one side of the Fuller compressor room was a sliding door which opened onto the west deck of the platform. Adjacent to the Fuller compressor room was the production office which in turn was adjacent to the boiler room. The production office and Fuller compressor room were connected by a door. A partial wall separated the production office from the boiler room.

Both the production office and boiler room were classified as nonhazardous areas. According to the applicable codes, rooms adjacent to hazardous areas were required to be kept at a pressure level of one tenth of an inch of positive pressure and have a guaranteed air flow of 60 feet per minute. There was some evidence that the classification of the production office and boiler room was incorrect because they contained sparking devices, and transmissions of gas from the Fuller compressor room were reasonably anticipated.

On the day of the explosion, the Fuller compressor was being put back in service and as employees were opening the valves to feed gas into the compressor, some of the gas escaped into the room. The cause of the gas leak was an incomplete hook up of the flanges of the compressor. A gas alarm sounded and several employees rushed to the Fuller compressor room to look for the

leak. The sliding door was opened to let the room air out. Also during this period of time, the door between the production office and boiler room was continually opened, shut, and left open, despite the fact that employees had been told to keep doors and rooms aboard the platform shut to prevent loss of pressurization. Loss of pressurization in this area apparently allowed the leaking gas to accumulate, leading to the explosion.

Inspections of the King Salmon platform were conducted by different groups prior to the accident. On January 16, 1975, Arthur Tauriainen, a state inspector for the Division of Occupational Safety and Health (DOSH), conducted a surprise inspection of the platform. He was accompanied by Dallas Burford, ARCO's production foreman for that day. There was some dispute as to whether the Fuller compressor was operating and inspected during this inspection. Tauriainen found no violations aboard the platform.

Two other inspections were conducted in 1975 which uncovered some problems on the platform but did not address the pressurization problems in the Fuller compressor room area. One was conducted by the manager of Safety and Fire Prevention for the North American Product Division of ARCO, and the other by the Good Operations Task Force, composed of six platform employees from other oil companies operating platforms in Cook Inlet.

## II

## PROCEEDINGS BELOW

Wilson and Cooper filed suit in superior court against several defendants, including the State of Alaska. Shortly before trial, Wilson and Cooper settled and dismissed claims against all other defendants except the state.

Wilson and Cooper claimed the state was liable as a result of its negligent inspection in failing to find the pressurization problems which eventually caused the explosion. The state argued that the inspection was not negligent because there were no stan-

dards to guide resolution of the pressurization problem resulting from opening and closing doors and that such activity would not normally be foreseen and corrected by a state inspector.

Resolution of this dispute centered heavily on the expert testimony of Stanley Freeman regarding matters of industrial safety and OSHA inspections. Pursuant to Alaska Rule of Evidence 705, the court required Freeman to state the facts and/or data underlying his opinion in advance on *voir dire*. Freeman stated his foundation was solely Tauriainen's deposition. Freeman was then permitted to testify, over objection, that in his opinion Tauriainen was not negligent in his inspection. Wilson and Cooper did not move to strike this statement and were permitted to cross-examine Freeman on the basis of his opinion.

After Freeman was excused, Wilson and Cooper sought to introduce exhibits 29 and 30 to impeach Freeman. The court admitted exhibit 29 but refused to admit exhibit 30.

Finally, in its instructions to the jury, the court refused the state's proposed instruction on intervening and superseding negligence. Also, over Wilson and Cooper's objection, the court gave the jury the state's proposed instruction on the professional standard of care applicable to Tauriainen.

The jury returned a verdict that the state was not liable for negligence in the death of LeRoy Cooper and the injuries sustained by Paul Wilson. Wilson and Cooper appeal from this judgment and the state cross-appeals on the issue of the trial court's refusal to instruct on superseding and intervening negligence.

## III

## ISSUES

*Instruction 23*

Wilson and Cooper assert that the trial court erred in instructing the jury on the duty of care owed by a state OSHA inspector. The disputed instruction with respect to this claim is instruction 23, which states:

In performing his duties for his employer, the State of Alaska, an occupational safety and health inspector such as Arthur Tauriainen has a duty to have that degree of learning and skill ordinarily possessed by an occupational safety and health inspector employed in the same or similar locality and under similar circumstances.

It is his further duty to use the care and skill ordinarily used in like circumstances by other occupational safety and health inspectors employed in the same or a similar locality under similar circumstances and to use reasonable diligence, and his best judgment in the exercise of his professional skill and in the application of his learning in an effort to accomplish the purpose for which he was employed.

A failure to perform such duty is negligence.

Wilson and Cooper's argument that instruction 23 was erroneous is twofold. First, they claim that the giving of instruction 23 in conjunction with the general negligence instructions could be read as requiring a standard of care lower than that which a reasonably prudent person must observe. Second, they argue that a professional standard of care instruction was inappropriate because employment as a safety inspector is not a skilled trade or profession.

■ When instruction No. 23 is considered in the context of the other duty of care instructions which were given, we believe that there is no reasonable possibility that the jury was led to believe that the state could be exonerated if Tauriainen had acted less carefully than a reasonably prudent person. The other instructions made it clear that the state was to be found liable if its employee had not acted as would a reasonably prudent person under similar circumstances.[1]

■ It is unnecessary for us to decide whether giving a professional standard of care instruction is appropriate with respect to safety inspections. If it was error to give such an instruction in this case, the

1. Instruction No. 16 provided:
 I will now define negligence for you.
 A person is negligent if he does not use reasonable care. Negligence may result from action or inaction. *A person is negligent if he does not act as a reasonably careful person would act under similar circumstances.*
 *In this case you must decide whether or not defendant used reasonable care under the circumstances.*
 Instruction No. 17 provided:
 *Negligence is the doing of something which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do,* under circumstances similar to those shown by the evidence.
 *It is the failure to use ordinary or reasonable care.*
 *Ordinary or reasonable care is that care which persons of ordinary prudence would use in order to avoid injury to themselves or others under circumstances similar to those shown by the evidence.*
 Instruction No. 18 provided:
 *The amount of caution required of a person in the exercise of ordinary care depends upon the conditions apparent to him or that should be apparent to a reasonably prudent person under circumstances similar to those shown by the evidence.*
 Instruction No. 19 provided:

 *You are instructed that the State, once it has undertaken to conduct a safety inspection of a work place, has a duty to exercise reasonable care in conducting such inspection.* The duty of the State to exercise reasonable care in the conduct of safety inspections requires that it (1) discover hazards to the safety of workers which would be brought to light by an inspection conducted with reasonable care and (2) take such action as is required by law and regulation. *If the State breaches its duty in either respect, and if such breach is a legal cause of injury, the State is liable to the injured party for the damage caused by the breach.*
 Instruction No. 22 provided:
 Compliance Officers for the State of Alaska Department of Safety and Health have a duty to:
 1. Conduct effective inspections to determine whether employers are complying with the safety and health regulations set forth by the Commissioner of Labor; and
 2. During inspections, identify, professionally evaluate, and accurately report all safety and health hazards which cause or might cause injury or death to employees. (Emphasis added).

error was harmless because there was no reasonable possibility of jury confusion.

### Expert's Negligence Opinion

Following several preliminary questions about the general operating and training practices of OSHA, Stanley Freeman, the state's expert witness, was asked the following question:

And I'll ask you, sir, that—keeping in mind all of the professional qualifications that—and learning that you have demonstrated to the jury, do you have an opinion as to whether or not that inspection, based on your knowledge of what occurred, both at the time and afterwards, was negligent conduct on the part of Mr. Tauriainen?

Counsel for Wilson and Cooper objected on the ground that the question called for a legal conclusion. The court sustained the objection, excused the jury, and clarified its ruling. Judge Rowland explained that he sustained the objection because the question lacked a standard of care upon which an opinion of negligence could be based.

The following exchange resulted from the above ruling:

Q. Mr. Freeman, I want you to—I want you to assume for the purposes of my question that Mr. Tauriainen, on the date that he made that inspection, which was, I believe, January 16, 1977, was required to have that degree of learning and skill ordinarily possessed by an Occupational Safety and Health inspector, employed in the same or similar locality, under similar circumstances, and that it was his duty to use the care and skill ordinarily used in like circumstances by other Occupational Safety and Health inspectors employed in the same or similar locality, under similar circumstances, and to use reasonable diligence and his best judgment in the exercise of his professional skills and in the application of his learning, in an effort to accomplish the purpose for which he was employed. Now, having that in mind, and assuming that to be the standard that he had to meet, do you have an opinion as to whether or not he was negligent, Mr. Tauriainen was negligent when he conducted the inspection of January 16, 1975?

A. I have an opinion.

Q. And what is your opinion, sir?

A. Well, there are several—several facets of the. . . .

Q. Just state. . . .

A. . . . . this opinion.

Q. . . . . your opinion. Do you have an opinion? Was he negligent or not?

A. I do not believe he was negligent.

Wilson and Cooper claim that this testimony was erroneously admitted because the right of an expert to testify as to the "ultimate issue" does not authorize him to testify as to legal conclusions such as negligence.[2] The state asserts that predicating the question on a standard of care cured any problems of admissibility.

■ In our opinion, this testimony was clearly admissible under Evidence Rule 704 which states:

*Opinion on Ultimate Issue.* Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

---

2. The following illustration was given by Wilson and Cooper to clarify their objection:

Consequently, pursuant to the commentary in Rule 704, it is appropriate to ask: "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution? But it is not appropriate to ask "Did T have capacity to make a will?" . . . [I]f a question is

phrased such that it calls for a conclusion of law, there is no assurance that, in answering it, the expert knows the correct standard to apply in giving the opinion.

It appears from the above that appellants' claim of error is that the form of Freeman's testimony should have been in terms of a standard of care not in terms of negligence or non-negligence.

According to the commentary to this Rule, the only limits on admissibility of an expert's opinion on an ultimate issue are that the opinion be helpful to the trier of fact (Evidence Rules 701 and 702), based on facts or data reasonably relied on by other experts (Evidence Rule 703), and not unduly prejudicial or misleading to the jury (Evidence Rule 403). In our opinion, the requirements of Evidence Rules 701, 702 and 703 were satisfied. Further, any problems of confusion or prejudicial effect on the jury were cured by predicating Freeman's opinion on a standard of care and issuing a cautionary instruction. Under these circumstances, it was not error to allow Freeman to state his opinion on Tauriainen's negligence.

*Foundantion*

Pursuant to Evidence Rule 705(a),[3] the court exercised its discretion to order Freeman to state the facts or data underlying his opinion as to Tauriainen's negligence in advance on *voir dire*. Freeman indicated that his opinion was based solely on the deposition of Tauriainen. Wilson and Cooper discovered during later examination of Freeman that his opinion that Tauriainen was not negligent was based on information not contained in the Tauriainen deposition. Specifically, they claim that his opinion was based on four assumptions not supported by the proffered foundation: (1) that Tauriainen did not enter the Fuller compressor room during the inspection; (2) that Mr. Sparkman, an ARCO employee, had given the platform a "clean bill of health;" (3) that Mr. Olson, a federal OSHA inspector who inspected the platform after the accident, stated in a deposition that he was not aware of purging systems on other platforms; and (4) that a task force inspection had not uncovered the specific violation in question. Wilson and Cooper claim that Freeman's testimony as to Tauriainen's

negligence thus lacked an adequate foundation.

■ The problem with this assertion is that appellants do not point to any erroneous ruling made by the trial court. Once Freeman varied his testimony by expanding the basis on which he rested his opinion the court might have stricken his testimony, or taken some other remedial step. However, no request for any such action was made. Instead counsel relied on cross-examination, which was both free-ranging and extensive, to demonstrate the weaknesses of Freeman's position. No judicial action, or inaction, is presented here which may be reviewed.

## IV

### EXHIBIT 30

During the course of trial, plaintiffs offered two letters as exhibits 29 and 30. Exhibit 29 was a letter from ARCO to Gage and Babcock, a fire safety company, stating:

> We would appreciate your opinion on possible advantages of making any room or enclosure comply with National Fire Code Section 496. If such a classification change is desirable, the pressure alarms should be incorporated in the design package.

Exhibit 30 responds to that letter, indicating that section 496 could apply, how it might be helpful to change the classification, and the specific conditions and studies that would be necessary if such a change was desired. Both exhibits were initially rejected on hearsay grounds.

During redirect examination of Freeman, Wilson and Cooper reoffered exhibits 29 and 30 to establish that Freeman erroneously assumed that management would correct any defects of which it was aware. The court ultimately admitted exhibit 29 but refused to admit exhibit 30. Wilson and

3. Alaska R.Evid. 705(a) provides:

(a) *Disclosure of Facts or Data.* The expert may testify in terms of opinion or inference and give his reasons therefore without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data, subject to subdivisions (b) and (c).

Cooper claim that it was error not to admit exhibit 30 to challenge Freeman's assumption that management would correct any conditions of which it had knowledge, and to discredit Freeman's opinion in general.[4]

 In our opinion, the trial court erred in refusing to admit exhibit 30 on hearsay grounds. Hearsay is an out of court statement offered in evidence to prove the truth of the matter asserted. Evidence Rule 801(c). Exhibit 30 was offered to prove solely that management was aware of a pressurization problem and that Freeman's assumption otherwise was wrong. It was not being offered to prove the truth of the matter asserted, that a pressurization problem did in fact exist and that Tauriainen was negligent in not noticing it. When testimony is offered to establish the fact that a statement was made for a purpose other than proof of the truth of the matter asserted, the hearsay rule does not apply. *See United States v. Thiel,* 619 F.2d 778, 781 (8th Cir.1980); *Putnam v. State,* 629 P.2d 35, 40 (Alaska 1980).

 Although we conclude that it was error not to admit exhibit 30, we do not believe that the error warrants reversal of the judgment. The test for harmless error requires the court to place itself in the position of the jury and " 'determine whether, as reasonable men, the error committed probably affected their verdict.' " *Love v. State,* 457 P.2d 622, 631 n. 15 (Alaska 1969) (quoting *State v. Dutton,* 83 Ariz. 193, 318 P.2d 667, 671 (1957)). Our reasoning here is similar to that which we applied in analyzing harmless error in *Poulin v. Zartman,*

542 P.2d 251 (Alaska 1975). In that case, we held that improperly admitted evidence regarding lack of prenatal care in a medical malpractice action was harmless error because the testimony consumed a small amount of time in a lengthy trial and did not affect the jury. *Id.* at 261. Similarly, the failure to admit exhibit 30 in this case was a minor part of a lengthy trial and dealt with a collateral point. We believe that it is not likely that the jury's decision was affected by this lack of evidence. Consequently, the failure to admit exhibit 30 was harmless error.

The judgment is AFFIRMED.

RABINOWITZ, Justice, dissenting.

I dissent from the court's conclusion that the superior court's failure to qualify the professional standard of care instruction (Instruction 23) in accordance with appellants' request can be considered harmless error. The state's expert witness testified that OSHA inspectors were generally less well-trained than they should have been. Thus, the jury could have found for the state on the ground that Tauriainen's conduct was not negligent when judged against the OSHA standard despite the fact that the state might have been found directly negligent as a result of its failure to exercise reasonable care in the conduct of safety investigations. Given this possibility, I cannot conclude that the superior court's decision to give Instruction 23, when considered in conjunction with the court's other negligence instructions, was harmless error.

---

4. Plaintiff's purpose for reoffering exhibit 30 was to undercut the following testimony by Freeman:

 A. No, I'm saying that in view of—as I stated earlier, in view of his [Tauriainen's] training, experience, background, and the fact that people of considerably more experience on platforms, including the management of that platform, were unaware of that particular violation over a long period of time. And eventually, if that violation in truth—which nobody knows, in truth was involved, an explosion resulted....

 Q. Is it your contention that you have read documents saying that management didn't know that this situation existed?
 A. I have not read any documents that said they were aware of that particular situation, that's correct.
 Q. You have not.
 A. That's right.
 Q. If you read some documents to that effect, would you change your opinion in what Mr. Tauriainen should have seen?
 A. I don't know. I would have to—I really can't say "yes" or "no" to that question, because there are so many other factors that would be involved.