Albert **BIERRIA, as former owner of the f/v Ivanoff II, Appellant and Cross–Appellee,**

v.

**DICKINSON MANUFACTURING CO., LTD., a foreign company, and Dickinson USA, Inc., a Washington corporation, Appellees and Cross–Appellants.**

Nos. S–9489, S–9509.

Supreme Court of Alaska.

Nov. 23, 2001.

Matthew W. Claman, Claman Law Firm, Anchorage, for Appellant and Cross–Appellee.

Joanne Thomas Blackburn, Gary D. Swearingen, Garvey, Schubert & Barer, Seattle, WA, for Appellees and Cross–Appellants.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

## OPINION

MATTHEWS, Justice.

## I. INTRODUCTION

Albert Bierria sued Dickinson Manufacturing after his fishing boat caught on fire and sank, alleging that the fire had been caused by a design defect in the boat's Dickinson stove. The jury concluded that the stove was defective but, despite Bierria's testimony that he had properly installed and maintained the stove, also concluded that the de-

fect had not existed when the stove left Dickinson's possession. On appeal, Bierria argues that the jury's verdict was unsupported by the evidence, given his allegedly uncontroverted testimony that he had properly installed and maintained the stove. Bierria also appeals the trial judge's decision to exclude testimony about certain other boat fires involving Dickinson stoves, and to admit evidence about tests conducted on a Dickinson stove in an on-shore warehouse rather than aboard a seagoing vessel. We affirm.[1]

## II.  FACTS AND PROCEEDINGS

Albert Bierria owned and operated the F/V IVANOFF II as a salmon seiner. In 1990 he purchased a Dickinson stove for the IVANOFF II. Bierria installed the stove himself and constantly changed parts on the stove while he owned it. After installing the stove, Bierria replaced the stove's gravity flow fuel system with an impulse pump, which he connected to the main fuel line with rubber tubing.

In 1996 the IVANOFF II caught on fire and sank. Bierria sued Dickinson Manufacturing ("Dickinson"), claiming that the fire had been caused by a defect in the Dickinson stove that he had purchased and installed six years before. Over Bierria's objection, the trial judge, Superior Court Judge Harold M. Brown, excluded evidence about certain other boat fires involving Dickinson stoves on the ground that the other fires were not substantially similar to the fire aboard the IVANOFF II, but admitted evidence about tests of the Dickinson stove conducted by the defendant's expert, Dr. Paul Blotter, despite the fact that the tests were not conducted onboard a seagoing vessel.

The special verdict form submitted to the jury instructed them that if they found that the fire aboard the IVANOFF II began at the stove, they were still required to answer three more questions affirmatively before Dickinson could be found liable:

(2) Was the product made by the defendant defective?;

(3) Was the product defective when it left the possession of the defendant?;

(4) Was a defect in the product a legal cause of harm to the plaintiff? [2]

The jury answered "yes" to Question 2 but "no" to Question 3 (and so did not reach Question 4), resulting in a verdict against Bierria.

Bierria requested a new trial, arguing that there was no evidence supporting the jury's verdict that the stove was not defective when it left Dickinson's possession. The trial judge denied Bierria's motion. Bierria appeals the denial of his motion for a new trial, and also appeals the trial judge's disputed evidentiary decisions.

## III.  STANDARD OF REVIEW

■■■■ Authority to grant or deny a new trial rests within the discretion of the trial court.[3] This court will review the refusal to grant a new trial under an abuse of discretion standard, and will review the record in the light most favorable to the non-moving party.[4] This court will not interfere with the trial court's exercise of discretion except in the most exceptional circumstances to prevent a miscarriage of justice.[5] "An abuse of discretion exists when 'evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust.' "[6]

---

1.  Our decision in this case makes Dickinson's cross-appeal regarding jury instructions moot.

2.  Like the special verdict form, Jury Instruction 14 instructed the jury that Bierria could recover (on the theory that the boat had been damaged by a defect in the Dickinson stove) only if he established that (1) the stove was defective, (2) the stove was defective when it left Dickinson's possession, and (3) a defect in the stove was a legal cause of Bierria's injuries. Bierria did not object to Jury Instruction 14, or to the special verdict form.

3.  *See Kulawik v. ERA Jet Alaska,* 820 P.2d 627, 639 (Alaska 1991).

4.  *See id.*

5.  *See id.*

6.  *Id.* (quoting *Ahlstrom v. Cummings,* 388 P.2d 261, 262 (Alaska 1964)).

■ The standard of review for the superior court's evidentiary rulings is abuse of discretion.[7]

## IV. DISCUSSION

### A. Did the Trial Court Err in Rejecting Bierria's Motion for a New Trial?

■ As neither Bierria nor Dickinson argues that some third party should be held responsible for the defect in the stove, the jury's verdict that the stove was defective apparently compels one of two conclusions: either Dickinson was responsible for the defect, or Bierria was. Bierria contends that because Dickinson—allegedly—did not controvert his testimony that he had properly installed and maintained the stove, there was no evidentiary basis for the jury's implicit conclusion that Bierria, rather than Dickinson, was responsible for the defect in the stove. Dickinson argues that Bierria's testimony that he properly installed and maintained the stove was controverted, and also argues that the jury was in any event entitled to reject Bierria's claims.

As an initial matter, there was evidence in the record that challenged Bierria's claim that he properly installed and maintained the stove. At trial, Bierria admitted that he ran fuel to the stove through a rubber hose instead of through copper tubing. Not only did the stove's instruction manual arguably require the use of copper tubing,[8] the jury also heard testimony that rubber lines are generally not appropriate for marine use. Given this evidence, we cannot conclude that the jury's verdict that the defect in the stove arose after it left Dickinson's possession, presumably because of some fault of Bierria, was "plainly unreasonable and unjust."[9]

### B. Did the Trial Judge Err in His Evidentiary Rulings?

#### 1. The other boat fires

Bierria argues that Judge Brown applied the wrong legal standard by requiring "substantial similarity," rather than mere "similarity," before admitting evidence about other boat fires involving Dickinson stoves.[10] Case law both from Alaska and from other jurisdictions, however, suggests that more important than how the test is phrased is how it is applied.[11] However phrased, the purpose of the test, like the purpose of the Rules of Evidence, is to permit the introduction of relevant evidence while guarding against confusion, undue delay, and unfair prejudice.[12]

---

7. *See Nautilus Marine Enters., Inc. v. Valdez Fisheries Dev. Ass'n*, 943 P.2d 1201, 1203 n. 3 (Alaska 1997).

8. Although the copper tubing requirement was contained within the gravity pump section of the manual, there was testimony that the requirement also applied to the impulse pump section that followed immediately after.

9. *Kulawik*, 820 P.2d at 639 (quoting *Ahlstrom*, 388 P.2d at 262).

10. Bierria explicitly contests the exclusion of evidence of allegedly similar fires aboard six fishing vessels: JOLEEN, HIGH ROLLER, C MARIE, SHEARWATER, NATALIA, and MAD GAFFER. The record shows that Judge Brown excluded testimony about the fire aboard the JOLEEN because the testimony was based entirely on hearsay, however, rather than on grounds of dissimilarity.

11. Bierria cites no case whose holding turned upon a distinction between "similarity" and "substantial similarity" of other occurrences. Instead, for every case cited by Bierria in support of his argument that admissibility requires only "similarity," there is a later case from the same jurisdiction that—without overruling earlier precedent—describes admissibility as requiring "substantial similarity." *Compare Gumbs v. International Harvester, Inc.*, 718 F.2d 88, 97 (3d Cir.1983) (similarity); *Tacke v. Vermeer Mfg. Co.*, 220 Mont. 1, 713 P.2d 527, 532 (1986) (similarity); *with Barker v. Deere and Co.*, 60 F.3d 158, 162 (3d Cir.1995) (substantial similarity); *Kissock v. Butte Convalescent Ctr.*, 297 Mont. 307, 992 P.2d 1271, 1274 (1999) (substantial similarity). Analogously, while in *Johnson v. State* we described the test for admissibility as requiring only similarity between occurrences, *see* 636 P.2d 47, 57 (Alaska 1981), the cases cited in support of that holding described the requirement as one of substantial similarity. *See St. Louis S.W. Ry. Co. v. Jackson*, 242 Ark. 858, 416 S.W.2d 273, 278 (1967); *Gilbert v. Pessin Grocery Co.*, 132 Cal.App.2d 212, 282 P.2d 148, 154–55 (1955).

12. *Cf. Drabik v. Stanley–Bostitch, Inc.*, 997 F.2d 496, 508 (8th Cir.1993); *see also Dura Corp. v. Harned*, 703 P.2d 396, 410–11 (Alaska 1985) (balancing relevancy and considerations of delay, confusion, and prejudice in determining admissibility of evidence of prior or subsequent accidents). *Compare* Alaska R. Evid. 402 (permitting admission of relevant evidence) *with* Alaska R.

During the evidentiary hearing before Judge Brown, Bierria argued that evidence of other stove fires would help to establish that a design defect in the Dickinson stove allowed excess fuel to overflow the burner pot or escape from the fuel-metering valve, thus causing the fire aboard the IVANOFF II. For several of the other vessel fires, however, there was no evidence that the cause of the fire was an overflow of fuel from the burner pot or fuel-metering valve. The HIGH ROLLER and the C MARIE caught fire when high winds caused excess draft and subsequent overheating of the stoves, and the SHEARWATER caught fire when fuel escaped from a cracked burner pot. The fire aboard the IVANOFF II, by contrast, occurred in "flat calm" conditions, and Bierria did not seriously argue that the fire aboard the IVANOFF II was caused by a cracked burner pot. Given the dissimilarity between the causes of the fires aboard the HIGH ROLLER, C MARIE, and SHEARWATER, and Bierria's stated rationale for introducing evidence of other fires involving Dickinson stoves, we cannot conclude that Judge Brown abused his discretion by excluding evidence about these fires.

By contrast, the fire aboard the MAD GAFFER allegedly involved the fuel-metering valve, which Bierria argued could also have been the cause of the fire aboard the IVANOFF II. Evidence about the fire aboard the MAD GAFFER was thus clearly relevant in a way that evidence about the fires aboard the HIGH ROLLER, C MARIE, and SHEARWATER was not.[13] But the trial transcript indicates that Judge Brown was willing to *allow* the introduction of evidence about the fire aboard the MAD GAFFER. Bierria cannot base a claim of error upon his own decision not to present testimony about that fire to the jury.

The closest question is presented by Judge Brown's decision to exclude evidence of the fire aboard the NATALIA. The evidence presented to Judge Brown at trial about the fire aboard the NATALIA was somewhat confused, in part because Bierria's intended witness could no longer find his more detailed preliminary report about that accident. Although there was some evidence that the stove's fuel-metering valve might have been involved in the fire aboard the NATALIA, there was also evidence that the fire was caused by the boat owner's failure to adjust the carburetor on the boat's gravity-fed tank to account for a change in temperature and resulting change in fuel viscosity. Bierria used an impulse pump rather than a gravity-fed tank to fuel his stove. Significantly, too, Bierria did not argue at trial or before this court that there was relevant evidence about the fire aboard the NATALIA that he could not also introduce through testimony about the fire aboard the MAD GAFFER. Given the fact that Judge Brown was willing to allow testimony about the fire aboard the MAD GAFFER, the potential for confusion in light of the incomplete evidentiary record concerning the NATALIA, and the delay involved in calling a second marine surveyor as a lay witness,[14] we conclude that Judge Brown did not abuse his discretion by excluding evidence about the fire aboard the NATALIA.

#### 2. Blotter's tests

Bierria briefly argues that Judge Brown erred in admitting evidence of Dr. Paul Blotter's tests on a Dickinson stove, because Blotter conducted those tests in an on-shore warehouse rather than on a vessel under seagoing conditions.

This court has previously held:

Experimental evidence is admissible only if the conditions of the experiment were substantially similar to the conditions at the time of the event in issue. . . . [P]rinciples to guide the court in determining substantial similarity . . . include: 1) whether the dissimilarities are likely to distort the results of the experiment to the degree that the evidence is not relevant; 2) whether the dissimilarities can be adjusted for or explained so that their effect

---

Evid. 403 (permitting the exclusion of relevant evidence if its probative value is outweighed by danger of undue prejudice, undue delay, and confusion).

13.  *See* Alaska R. Evid. 401.

14.  The MAD GAFFER and the NATALIA were examined by two different marine surveyors.

on the results can be understood by the jury; 3) the purpose of the experiment and the degree to which the matter under experiment is a subject of precise science; and 4) whether the experiment would be considered valid by persons skilled or knowledgeable in the field which the experiment concerns.[15]

At trial, Bierria's counsel noted on cross-examination that Blotter had not tested the boat under seagoing conditions, where the vessel—and thus the stove—would roll and pitch. But the stove fire aboard the IVANOFF II occurred on a "flat calm" day, where any rolling and pitching of the vessel would have been minimal. Moreover, the only purpose of Blotter's test was to determine how hot the stove became, and how hot it made the area around it. In his brief to this court, Bierria does not explain how the limited motion of the sea at the time of the fire would have affected the heat of the stove or the heat of its surroundings. Without evidence that the results of Blotter's tests were likely to be distorted by the circumstances under which they were conducted, Judge Brown did not abuse his discretion in admitting those tests into evidence.

## V. CONCLUSION

Because there was adequate evidence supporting the jury's verdict that Dickinson was not responsible for the defect in the stove, and because Judge Brown did not abuse his discretion in excluding evidence about certain other boat fires or admitting evidence of Blotter's tests of the Dickinson stove, we AFFIRM the lower court's decision in all respects.

CARPENETI, Justice, not participating.

**15.** *Beck v. State, Dep't of Transp. and Public Facilities,* 837 P.2d 105, 113 (Alaska 1992) (citation omitted).