Joyce GETCHELL, Appellant,

v.

Barbara LODGE, Appellee.

No. S–10458.

Supreme Court of Alaska.

Feb. 28, 2003.

Danya R. Crosby and Mark E. Ashburn, Ashburn & Mason, Anchorage, and Jeffrey D. Jefferson, Nordstrom, Steele, Nicolette & Jefferson, Kenai, for Appellant.

David S. Carter and Kimberlee A. Colbo, Hughes, Thorsness, Powell, Huddleston & Bauman, LLC, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## *OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

When Barbara Lodge saw a moose in her lane of traffic, she braked and skidded on ice into the oncoming lane of traffic, causing a collision with Joyce Getchell's car. Getchell sued Lodge, and the case proceeded to a jury trial. The jury found that Lodge was not negligent. Getchell appeals the superior court's denial of her motions for judgment notwithstanding the verdict (JNOV) and new trial. She also appeals the trial court's admission of the investigating state trooper's testimony. Because we conclude that the trial court did not err in denying Getchell's motions for JNOV or new trial, or in admitting the trooper's testimony, we affirm.

## II. FACTS AND PROCEEDINGS

On the morning of January 16, 1998, Joyce Getchell and Barbara Lodge drove to work on the Kenai Spur Highway. Getchell headed south on the highway towards Kenai. Lodge headed north towards Nikiski. A thin layer of ice covered the unsanded road; the morning was dark. There was a dispute at trial about what happened next. However, because we draw all factual inferences in favor of the non-moving party when reviewing motions for JNOV and new trial, what follows is Lodge's account.[1]

Because of the darkness, the icy road conditions, and the possibility of moose crossing the highway, Lodge was driving at about forty-five miles per hour, even though the speed limit was fifty-five. A moose emerged out of the darkness from Lodge's right and tried to cross the road as Lodge neared Mile 20 of the highway. Lodge hit her brakes as hard as she could. She testified that her car skidded immediately and began to rotate in a counterclockwise direction. Lodge lost control of her car as it continued to rotate and

slide. Ultimately, the car crossed the center line of the road. The car finished rotating and came to a stop in the southbound lane. As Getchell headed south towards Mile 20, driving between forty-five and fifty-five miles per hour, she saw a car in her lane. Getchell hit the passenger side of Lodge's car. The impact injured Getchell's ankle, requiring surgery. State Trooper Harold Leichliter investigated the accident and completed an accident report based upon his observations of the scene and witness interviews.

Getchell brought a personal injury negligence action against Lodge. Before trial, Getchell objected to the introduction of portions of Trooper Leichliter's videotaped deposition. Getchell argued that the objectionable portions of the deposition should be excluded as impermissible opinion testimony under Alaska Rules of Evidence 701 and 702. Additionally, she argued that Trooper Leichliter's testimony was irrelevant and more prejudicial than probative, and therefore excludable under Alaska Rules of Evidence 402 and 403. The superior court admitted Trooper Leichliter's testimony over Getchell's objections.

Superior Court Judge Harold M. Brown conducted a three-day jury trial in July 2001. Getchell moved for a directed verdict, which the trial court denied. The jury found Lodge not negligent. After hearing the verdict, Getchell orally moved for a judgment in her favor notwithstanding the verdict or, alternatively, a new trial. The court entered judgment in favor of Lodge and against Getchell in September 2001, for $17,042.50 in attorney's fees and $5,473.18 in costs, a total of $22,515.68. Shortly thereafter, Getchell filed a motion for judgment notwithstanding the verdict and a motion for new trial. Judge Brown heard arguments on Getchell's motions in November 2001. Judge Brown denied Getchell's motions.

Getchell appeals Judge Brown's denial of her motions for JNOV and new trial. She also appeals the trial court's admission of Trooper Leichliter's testimony.

---

1. *See Bierria v. Dickinson Mfg. Co., Ltd.*, 36 P.3d 654, 656 (Alaska 2001); *Lynden, Inc. v. Walker*, 30 P.3d 609, 612 (Alaska 2001).

## III. STANDARD OF REVIEW

■ We will affirm a trial court's denial of a motion for judgment notwithstanding the verdict unless "the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable persons could not differ in their judgment of the facts." [2]

■ A "refusal to grant a new trial is reviewed under an abuse of discretion standard"; accordingly, we review the record "in the light most favorable to the non-moving party." [3] We disturb the trial court's exercise of discretion only "in the most exceptional circumstances to prevent a miscarriage of justice." [4] "An abuse of discretion exists when evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust." [5]

■ We review a trial court's "decision to admit or exclude evidence for abuse of discretion." [6] An abuse of discretion exists only when we are "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling." [7] We reverse the trial court's decision to admit or exclude evidence only if we determine that the trial court abused its discretion and that "the error affected the substantial rights of a party." [8]

## IV. DISCUSSION

### A. The Trial Court Did Not Err in Denying Getchell's Motions for Judgment Notwithstanding the Verdict and New Trial.

■ Getchell argues that the trial court erred in denying her motions for JNOV and new trial, contending that reasonable jurors could have only concluded that Lodge acted negligently. Getchell structures her argument around the tort consequences of Lodge's alleged violation of two Alaska traffic regulations.[9] Getchell contends that because Lodge crossed the center lane of traffic into Getchell's lane she violated 13 AAC 02.085 and 13 AAC 02.050. Because Lodge violated these traffic regulations, Getchell argues, the burden of proof shifted to Lodge to show by a preponderance of the evidence that her conduct was excused. To prove excuse in the instant case, Getchell asserts that Lodge had to demonstrate that she exercised reasonable care in two ways: "first, that she refrained from steering into oncoming traffic, and second, that she exercised reasonable care in handling her sliding vehicle." Getchell contends that Lodge steered into oncoming traffic, took no steps to control her skidding car, and that therefore "reasonable persons could only have concluded that

---

2. *Lynden,* 30 P.3d at 612.

3. *Bierria,* 36 P.3d at 656.

4. *Id.*

5. *Id.* (citations and internal quotations omitted).

6. *Liimatta v. Vest,* 45 P.3d 310, 313 (Alaska 2002).

7. *Id.*

8. *Dobos v. Ingersoll,* 9 P.3d 1020, 1023 (Alaska 2000).

9. A violation of a traffic regulation constitutes negligence per se in Alaska. *Ferrell v. Baxter,* 484 P.2d 250, 259 (Alaska 1971). This state's traffic laws prescribe the standard of care owed by a reasonable driver "to the general public who may be injured if such standard is not met." *Id.* A plaintiff who establishes that a defendant violated a traffic regulation makes a prima facie case that the defendant acted negligently. *Id.* The defendant then bears the burden "to prove affirmatively that his violation was excused." *Id.* at 266. "It is fair to put the burden of proving excuse upon the one who has violated the law in the first place." *Id.* "Excuse" is a fluid concept. *Id.* at 264. We have adopted the Restatement (Second) of Torts's position on excused violations of traffic regulations. *Id.* at 263–64. Section 288(A) provides:

> (1) An excused violation of a legislative enactment or an administrative regulation is not negligence.
> (2) Unless the enactment or regulation is construed not to permit such excuse, its violation is excused when
>> (a) the violation is reasonable because of the actor's incapacity;
>> (b) he neither knows nor should know of the occasion for compliance;
>> (c) he is unable after reasonable diligence or care to comply;
>> (d) he is confronted by an emergency not due to his own misconduct;
>> (e) compliance would involve a greater risk of harm to the actor or to others.

RESTATEMENT (SECOND) OF TORTS § 288(A) (1965).

Lodge failed to meet her burden of proving excuse by a preponderance of the evidence." [10]

▮ Getchell is correct that Lodge can only claim excuse if she handled her moose-avoidance maneuver and the resulting skid in a non-negligent manner. However, contrary to Getchell's argument, there is evidence in the record that Lodge did not purposefully steer into the oncoming lane and that the skid was not caused by her negligence. We will affirm a trial court's denial of a motion for judgment notwithstanding the verdict "unless the evidence, viewed in the light most favorable to the non-moving party, is such that reasonable persons could not differ in their judgment as to the facts." [11] A factual dispute exists here. Similarly, we affirm a trial court's denial of a motion for a new trial unless the court abused its discretion. [12] We will find an abuse of discretion when no evidence supported the verdict or when the evidence was "so slight and unconvincing as to make the verdict plainly unreasonable and unjust." [13] Ample evidence supports the verdict in this case.

Both Getchell and Lodge agree that it would have been negligent to steer into the oncoming lane of traffic on purpose under the circumstances of this case. However, Lodge testified that she did not steer into the other lane.

Q But you deny that you attempted to turn, correct?

A Yes.

Q Okay. And when asked in your deposition if you swerved to the right or to the left, you said: I did not turn and I did not swerve to the right or left, true?

A That's what I said, yes.

Q And you maintain that today?

A Yes, mmm-hmm.

James Stirling, Lodge's accident reconstruction expert, testified similarly:

Q Mr. Lewis testified that tire marks in the trooper photos indicate that Ms. Lodge's vehicle was sideslipping and rotating as it crossed the center line in the roadway. Do you agree with that position?

A Yes I do.

Q What's the significance of that information?

A The rotation started in her lane.

Q Are you aware of any evidence in this case that Ms. Lodge intended to steer into or swerve into the oncoming lane of traffic?

A No, I'm not.

In addition to the evidence that Lodge did not steer into the oncoming lane of traffic, Lodge testified that she slammed on her brakes to avoid a moose in her lane. According to Lodge, her brakes locked and she skidded into Getchell's lane. Reasonable jurors could have concluded that the presence of the moose in the road excused Lodge's skid into the oncoming lane of traffic. Skidding to avoid a moose is the type of excuse contemplated by § 288A of the Restatement (Second) of Torts, adopted by this court in

---

**10.** Getchell quotes language from Justice Boochever's dissent in *Wilson v. Sibert*, 535 P.2d 1034, 1040 (Alaska 1975), to support her position that "continuous, hard braking during a skid is an unquestionable example of negligent conduct."

> A driver may be presented with an emergency such as skidding on some ice which could not reasonably have been anticipated. Despite the emergency, if he forcefully and continuously applies his brakes, he will be found to have driven negligently. Even though he acted more or less instinctively, such application of brakes is not a reasonable choice.

*Id.* at 1041. Getchell's reliance on this portion of *Wilson* is misplaced for two reasons. First, it is a dissent and thus has no precedential value. Second, Justice Boochever recognized that

> when a driver proceeding on a highway is confronted by a person, animal or other vehicle suddenly appearing in the path of his vehicle ... [the driver] must make an instantaneous decision whether to proceed into the obstacle or to swerve to either side. Either decision may be reasonable under the circumstances, even though if more time were available, the driver could better determine which decision to make.

> *Id.*

**11.** *Lynden*, 30 P.3d at 612 (internal citations omitted).

**12.** *Bierria*, 36 P.3d at 656.

**13.** *Id.*

*Ferrell v. Baxter.*[14] Comment h of this section aptly describes this situation:

> *Emergency.* As in other cases of negligence (see § 296), the violation of an enactment or regulation will ordinarily be excused when the actor is confronted with an emergency which is not caused by his own misconduct.[15]

It is plausible that the jury concluded that the moose created an emergency situation for Lodge and that they therefore excused the unfortunate consequences of her attempt to avoid the moose.

The jury also heard other evidence from which it could have reasonably concluded that Lodge was not negligent. Lodge points out that she had very little time to react after she saw the moose in the road. Lodge's accident reconstruction expert, James Stirling, expressed his opinion that Lodge had approximately "three-point-some seconds before" she would have collided with the moose. According to Stirling, Lodge's perception of the danger, before she took any evasive action, would have consumed one-and-a-quarter to one-and-a-half seconds. Thus, Lodge argues, she had one-and-a-half seconds at most to slow the car down and correct the slide. Stirling testified that "[g]iven the surface and how slick it was, and given the speed of 45 miles an hour, [Lodge's attempts to correct her car's rotation] would have had to have been almost instantaneous to stop.... I would think she would have to perform higher than the average driver to do it." Based upon this testimony, reasonable jurors could have concluded that "Lodge was unable after reasonable care to comply with [13 AAC 02.085 and 13 AAC 02.050]." The trial court did not abuse its discretion in denying Getchell's motions for JNOV or new trial.[16]

**14.** 484 P.2d at 263–64; *see supra* note 9.

**15.** RESTATEMENT (SECOND) OF TORTS § 288A cmt. h (1965).

**16.** *See Nat'l Bank of Alaska v. McHugh,* 416 P.2d 239, 242 (Alaska 1966):

> In holding that the court did not err in refusing to grant appellant's motion for judgment, we applied a test of reasonableness. We held that whether appellee exercised reasonable care for his own safety was a question on which there was room for diversity of opinion

## B. The Trial Court Did Not Err in Admitting Trooper Leichliter's Testimony.

### 1. Trooper Leichliter testified as a hybrid witness.

Trooper Leichliter responded to the accident in this case and wrote an accident report. Before trial, Getchell objected to Trooper Leichliter's proposed testimony about causation and fault. She argued in a motion in limine that Trooper Leichliter should not be able to offer expert opinions because Lodge listed him as a fact witness rather than an expert witness in her witness list. Getchell asserted that because Trooper Leichliter was a fact witness, his testimony should be excluded as improper lay opinion evidence under Alaska Rule of Evidence 701 because, contrary to Rule 701's requirements, he did not see the accident. Alternatively, Getchell argued that if the court considered Trooper Leichliter an expert, his testimony should be barred because it did not satisfy Rule 702's helpfulness requirement. Although Lodge listed Trooper Leichliter as a fact witness, rather than an expert, the trial court apparently considered his testimony to be expert testimony. Judge Brown permitted Trooper Leichliter to testify regarding causation based upon his investigation of the accident.

In his testimony, Trooper Leichliter focused on the accident report that he prepared when he arrived at the accident scene. He testified that the moose was the only contributing factor and that no human factors contributed to the accident. Trooper Leichliter gave the opinion that drivers generally react to the sight of a moose in the road in front of them by braking, which could lead to skidding and loss of control in icy

> among reasonable men. Logically, a decision of that question reached by reasonable men would be a reasonable decision. It would be inconsistent, then, for us to hold that such a decision reached by the jury was contrary to the weight of the evidence or was not supported by legally sufficient evidence, for this would be equivalent to holding that under the evidence the jury could not reasonably have decided as they did on a question upon which reasonable minds could differ.

road conditions. He testified that he found no evidence indicating any improper conduct by Lodge. Lodge's defense attorney used this testimony in his closing statement as opinion evidence that Lodge was not negligent in responding as she did to the sighting of the moose. Trooper Leichliter's testimony incorporated both his observations as a percipient witness investigating the scene and his conclusions about causation based on over twenty-two years as a state trooper investigating accidents. Thus, we find that the label "expert" or "fact" witness lacks significance in this situation because Trooper Leichliter provided hybrid testimony.

We discussed the concept of hybrid witnesses in *Miller v. Phillips.*[17] In *Miller,* parents of an injured newborn sued their midwife for negligence.[18] The jury found for the midwife. On appeal, the parents argued that the trial court erred in allowing the midwife's supervising physician to testify as an expert because the midwife called him as a fact witness.[19] The trial court allowed the doctor to testify as a hybrid witness; he could not testify "in general terms about the appropriate standard of care," but he could testify to "his expert observations [and] his own opinions as to what he observed," as well as his "expert opinions based on his review of hospital records."[20] We held that the physician could express expert opinions formed as a supervisory participant, reasoning that "[w]hen physicians are called to testify about matters pertaining to the treatment of their patients, the distinction between an expert witness and a fact witness inevitably becomes blurred."[21] Like the treating physician in *Miller,* Trooper Leichliter, the investigating officer, was "intimately involved in the underlying facts giving rise to the litigation and . . . would reasonably be expected to form an opinion through that involvement."[22] Thus, despite Lodge's choice to list Trooper Leich-

liter as a fact witness, it was not error to permit him to base his opinions on his expertise. Moreover, Getchell was fully aware of the content of Trooper Leichliter's proposed testimony. She was able to depose Trooper Leichliter and thus suffered no prejudice from Lodge's decision to list him as a fact witness.

**2. The trial court did not err in admitting Trooper Leichliter's testimony under Rule 702.**

■ Getchell also argues that the trial court abused its discretion by admitting Trooper Leichliter's testimony as an expert witness because his testimony did not comply with Alaska Rule of Evidence 702. She contends primarily that Trooper Leichliter's testimony did not help the jury because the jury was at least as capable as Trooper Leichliter of determining whether Lodge acted reasonably.

■ Alaska Rule of Evidence 702(a) allows a witness to give opinion testimony if the witness is qualified "by knowledge, skill, experience, training or education," and if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[23] To be admissible, then, expert opinion testimony must be helpful to the jury. This helpfulness standard requires experts to "stop short of stating their own conclusions" on points that the jury is at least equally capable of determining.[24] In *Spenard Action Committee,* we relied on this rationale in holding that the superior court had erred in permitting police officers to express their opinion that a massage parlor was operating as a house of prostitution. On the other hand, in cases such as *Adkins v. Lester* and *State v. Phillips,* we have approved of the admission of police officers'

**17.** 959 P.2d 1247, 1250 (Alaska 1998).

**18.** *Id.* at 1248.

**19.** *Id.*

**20.** *Id.* at 1250.

**21.** *Id.* at 1248, 1250.

**22.** *Wakeford v. Rodehouse Rests. of Missouri,* 154 Ill.2d 543, 182 Ill.Dec. 653, 610 N.E.2d 77, 80 (1993).

**23.** Alaska R. Evid. 702.

**24.** *Spenard Action Comm. v. Lot 3, Block 1, Evergreen Subdivision,* 902 P.2d 766, 780 (Alaska 1995).

opinions as to the cause of particular traffic accidents that they have investigated.[25]

Trooper Leichliter's testimony satisfies Rule 702's requirements. First, his knowledge and experience qualified him as an expert. He served as a state trooper in Kenai for twenty years, and, as Lodge points out, Trooper Leichliter "routinely determined whether there were any human factors contributing to [accidents involving moose], such as speeding, or whether the accident was simply the result of a moose interfering with motor vehicle traffic." Second, Trooper Leichliter's testimony was at least of arguable assistance to the jury. His implied opinion that Lodge had not been negligent was not different in kind than the police testimony permitted in *Adkins v. Lester* and *State v. Phillips*. Finally, it is analogous to the type of testimony given by the accident reconstruction experts who testified at the trial without objection. The trial court did not abuse its discretion in admitting Trooper Leichliter's testimony under Rule 702.

### 3. The trial court did not err in declining to exclude Trooper Leichliter's testimony under Alaska Rule of Evidence 403.

■ Getchell finally argues that the trial court should have barred Leichliter's testimony under Alaska Rule of Evidence 403 because it was more prejudicial than probative.

Alaska Rule of Evidence 403 provides that the trial court may exclude relevant evidence "if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." [26] The commentary to the rule explains that "[s]ituations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission.... [T]here is a slight presumption in favor of admitting relevant evidence.... [T]o overcome this minimal presumption, the prejudicial effect must be demonstrably greater than the probative value of the evidence." [27]

■ It is true that Trooper Leichliter's testimony was prejudicial to Getchell in the sense that it bolstered Lodge's argument that her conduct was excused because she skidded to avoid a moose. However, "undue prejudice connotes not merely evidence that is harmful to the other party, but evidence that will result in a decision being reached by the trier of facts on an improper basis." [28]

We recognize that there is a danger that a police investigator's conclusion will be given undue weight by a jury.[29] In any particular case this may be a real danger. The officer may be focusing on whether the evidence will support a quasi-criminal traffic citation that must be proven beyond a reasonable doubt, rather than whether there is civil negligence that need only be proven by a preponderance of the evidence. Nonetheless, this possibility may be ignored by a jury, and because of the neutrality and prestige of an investigating officer, the officer's testimony may be given decisive weight. There is case law in other jurisdictions holding that a police officer's decision whether to issue a traffic citation is inadmissible on the question of negligence.[30] These authorities are based in part on the rationale that such testimony amounts to an opinion on an ultimate issue that is for the trier of fact to decide, an exclusionary rationale that our rules reject,[31] and in part on

---

**25.** *Adkins v. Lester,* 530 P.2d 11, 18 (Alaska 1974); *State v. Phillips,* 470 P.2d 266, 270–71 (Alaska 1970).

**26.** Alaska R. Evid. 403.

**27.** Alaska R. Evid. 403 commentary.

**28.** *Liimatta v. Vest,* 45 P.3d 310, 315 (Alaska 2002) (quoting *Hiller v. Kawasaki Motors Corp.,* 671 P.2d 369, 373 (Alaska 1983)).

**29.** *See Adkins v. Lester,* 530 P.2d 11, 17 (Alaska 1974).

**30.** *See Ferreira v. General Motors Corp.,* 4 Haw. App. 12, 657 P.2d 1066, 1069 (1983); *Ingrum v. Tucson Yellow Cab Co.,* 131 Ariz. 523, 642 P.2d 868, 872 (App.1982), and authorities cited therein.

**31.** Evidence Rule 704 provides: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *See Wilson v. State,* 669 P.2d 1292 (Alaska 1983).

the undue weight concerns. The answer we have accepted in response to these legitimate concerns is not a rule of blanket exclusion. Instead, vigorous advocacy including cross-examination is expected to serve as a safeguard against undue weight being given to police testimony.[32] A second safeguard is the discretionary power of the trial court under Rule 403 to exclude testimony when, on balance, its probative force is outweighed by the danger of unfair prejudice.[33] In the present case the record does not suffice to persuade us that the trial court abused its discretion in striking the balance mandated by Evidence Rule 403 in favor of the admission of Trooper Leichliter's implied opinion testimony.

## V. CONCLUSION

Because we find that there was evidence from which reasonable jurors could have differed in their judgment of the facts as to whether Lodge acted negligently, we AFFIRM the trial court's denial of Getchell's motions for JNOV and new trial. Because the trial court did not abuse its discretion in admitting Trooper Leichliter's testimony, we AFFIRM the decision to admit the testimony.