**Dale J.H. ANDREWS, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–10787.

Court of Appeals of Alaska.

Oct. 12, 2012.

Brooke Berens, Assistant Public Advocate, and Richard K. Allen, Public Advocate, Anchorage, for the Appellant.

Tamara E. de Lucia, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and John J. Burns, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## *OPINION*

BOLGER, Judge.

Dale J.H. Andrews was charged with second-degree sexual assault in an indictment alleging that he had engaged in sexual penetration of T.P. while she was incapacitated. Prior to trial, the State did not list the nurse who examined T.P. as an expert witness. Because of this, Andrews's attorney made a motion to preclude the nurse from offering any expert testimony. We conclude that the trial judge was not required to exclude this testimony because Andrews did not argue that he was surprised by the substance of the nurse's testimony.

### *Background*

T.P. and her friend, Moses Chythlook, had a get-together with a few friends, including Dale Andrews. The group was drinking beer and whiskey. Chythlook left the party at some point during the evening and went to drink at the Sea Inn Bar. T.P. testified that she then asked Andrews and the other guests to leave.

T.P. testified that she went into a guest bedroom to sleep. She did not invite anyone into the room with her. Later, she vaguely remembered feeling someone on top of her, and when she opened her eyes, she saw it was Andrews. The next thing T.P. remembered was waking up the next morning.

Chythlook testified that he left the bar and returned to the apartment after 2:00 a.m. Chythlook saw Andrews leaving the back bedroom. When Chythlook opened the door to the bedroom, he saw T.P. on the floor half naked. Chythlook tried to wake T.P. by shaking her shoulders, but she did not wake up. Chythlook suspected that Andrews had sexually assaulted T.P.; he kicked Andrews out of the apartment.

Chythlook called two women and asked them to come to the apartment and help dress T.P. After the women dressed her, T.P. tried to get up and stumbled around the room. T.P. spoke with slurred speech and was "freaking out" because she thought the women were trying to do something to her. When T.P. attempted to leave the room, one of the women pushed T.P., and T.P. "flopped on the floor."

T.P. woke up in the guest bedroom the following morning. She was wearing her clothes from the night before, but her pants were unzipped. Her genitals hurt and she had a bad headache. Chythlook told her that he believed Andrews had sexually assaulted her. Chythlook called the police, and T.P. went to the hospital.

At the hospital, Nurse Joan Junge performed a sexual assault examination. T.P. reported that she was sore in her vaginal and rectal area and that she experienced bleeding from her rectal area. Junge observed that T.P. had significant abrasions on her labial areas, and a jagged tear in her rectal wall. The nurse collected vaginal and rectal samples; DNA testing later matched the samples to Andrews's DNA.

Andrews was charged with second-degree sexual assault for engaging in sexual penetration with T.P. while she was incapacitated.[1]

At trial, the State called Nurse Junge to testify about the sexual assault examination. Andrews objected to Junge providing expert testimony because the State had not listed her as an expert. Superior Court Judge Fred Torrisi cited *Miller v. Phillips*[2] for the proposition that in some circumstances a treating physician may provide an expert opinion without being specifically disclosed as an expert. The judge also stated that he was assuming that this witness had been known to the defense for a long time. But he invited defense counsel to object if he was mistaken about the facts or the law: "[U]nless I got the idea that ... there was some sort of surprise here or unless you pointed

me to some case that I haven't looked at, I would be inclined to let her [provide her opinion]."

The following day, the judge ruled that notice was not required and he therefore overruled Andrews's objection. The court noted that Andrews could object to individual questions if he thought that the proffered testimony was outside the scope of Junge's expertise.

Junge testified that T.P.'s injuries were not likely associated with consensual sexual activity. She testified that vaginal abrasions are unlikely with consensual sex and that consensual anal sex did not usually result in tearing. The jury found Andrews guilty of second-degree sexual assault, and Andrews now appeals.

### Discussion

Andrews argues that the trial judge erred when he admitted Junge's testimony because the State failed to provide notice that Junge would offer an expert opinion on the conclusions to be drawn from the nature of T.P.'s injuries. Andrews concedes that he "did not argue to the [trial] court that he was surprised by the substance of the witness's expert testimony, apart from being surprised by the fact that she was being allowed to offer it."

Alaska Rule of Criminal Procedure 16(b)(1)(B) provides that, no later than forty-five days prior to trial, "the prosecutor shall inform the defendant of the names and addresses of any expert witnesses performing work in connection with the case or whom the prosecutor is likely to call at trial." The prosecutor is required to "make available for inspection and copying any reports or written statements of these experts."[3] The prosecutor must also "furnish to the defendant a curriculum vitae and a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion."[4]

The rule states that the "[f]ailure to provide timely disclosure ... shall entitle the

---

**1.** AS 11.41.420(a)(3).

**2.** 959 P.2d 1247 (Alaska 1998).

**3.** Alaska R.Crim. P. 16(b)(1)(B).

**4.** *Id.*

defendant to a continuance."[5] If the court concludes that "a continuance is not an adequate remedy under the circumstances of the case, the court may impose other sanctions, including prohibiting the prosecutor from calling the expert at trial or declaring a mistrial."[6] However, we have upheld trial court decisions refusing to provide these remedies for a violation of Rule 16 where the defendant was aware of the substance of the expert witness's testimony, because in those cases the failure to provide notice resulted in no unfair surprise.[7]

In *Hunter v. State*, we recognized that some testimony cannot be clearly categorized as lay testimony or expert testimony, because it is a mix of both.[8] In *Hunter*, the defendant objected to the testimony of five Sexual Assault Response Team nurses on the ground that the nurses were not qualified to provide expert testimony.[9] In analyzing that claim, we concluded that the nurses had provided hybrid testimony—they provided lay testimony when they testified about their personal observations of the victims' injuries, and they provided expert opinions when they testified about whether the injuries they observed were consistent with the victims' claims of sexual assault.[10]

Andrews challenges Jung's testimony that vaginal abrasions are not likely consistent with consensual sex, that consensual anal sex does not generally result in tearing, that T.P. appeared to be moving slowly to reduce discomfort and pain, and that T.P.'s headache and a lump on her head were consistent with her statements about what had happened to her. Like the testimony of the SART nurses in *Hunter*, these statements appear to be based on a mix of Junge's personal observations and her training and expertise as a nurse.

The supreme court has upheld the admission of this type of hybrid testimony even though the party offering the testimony did not provide the pre-trial notice required under Alaska Civil Rule 26. In *Miller v. Phillips*, the parents of a newborn child sued their midwife for malpractice.[11] At trial, the parents challenged the testimony of the supervising physician on the ground that the midwife had failed to list the physician as an expert witness.[12] The trial court allowed the doctor to testify about "his expert observations [and] his own opinions as to what he observed."[13]

The supreme court affirmed, explaining that "[w]hen physicians are called to testify about matters pertaining to the treatment of their patients, the distinction between an expert witness and a fact witness inevitably becomes blurred."[14] The court recognized that "[c]ourts in other jurisdictions have often recognized that treating physicians need not be listed as expert witnesses on pretrial disclosure lists, even when their proposed testimony involves opinions regarding their patients' injuries, treatment, and prognoses."[15]

The parents in *Phillips* also argued that the midwife's failure to list the supervising physician as an expert caused them unfair surprise.[16] The supreme court concluded that the parents knew the physician would testify at trial and that "they had ample advance notice of the substance of his opinions."[17] The supreme court therefore concluded that the trial court did not abuse its

---

5. *Id.*

6. *Id.*

7. *See, e.g., Worden v. State*, 213 P.3d 144, 146 (Alaska App.2009); *Russell v. Anchorage*, 706 P.2d 687, 690 (Alaska App.1985).

8. Mem. Op. & J. No. 5259, 2007 WL 2405208, at *13 (Alaska App. Aug. 22, 2007).

9. *Id.* at *12.

10. *Id.* at *13.

11. 959 P.2d at 1248.

12. *Id.* at 1250–51.

13. *Id.* at 1250.

14. *Id.*

15. *Id.*

16. *Id.* at 1251.

17. *Id.*

discretion when it allowed the treating physician to state his opinions.[18]

Similarly, in *Getchell v. Lodge,* the Alaska Supreme Court determined that it was not an abuse of discretion for the trial court to allow a state trooper to testify about his opinions on causation and fault in a car accident, even though the defendant had listed the trooper as a fact witness on her witness list.[19] Relying on *Miller v. Phillips,* the court concluded that, "[l]ike the treating physician in *Miller,* ... the investigating officer[ ] was 'intimately involved in the underlying facts giving rise to the litigation and ... would reasonably be expected to form an opinion through that involvement.'"[20] Although the defendant listed the trooper as a fact witness, "it was not error to permit him to base his opinions on his expertise."[21] The supreme court also found that there was no unfair surprise: Getchell was fully aware of the content of the trooper's proposed testimony and suffered no prejudice from the defendant's decision to list him as a fact witness.[22]

Andrews argues that his case is distinguishable because he did not have actual notice of the substance of Junge's opinion testimony and that "[n]othing in the record indicates that the defense knew Junge's opinions regarding the consistency of the injuries with a sexual assault." But Judge Torrisi specifically stated that, unless Andrews argued that he had been surprised by this testimony, the judge would be inclined to allow Junge to provide her opinion. In response, as Andrews concedes, defense counsel "did not argue to the court that he was surprised by the substance of the witness's expert testimony, apart from being surprised by the fact that she was being allowed to offer it."

Andrews argues that it was the State's burden to demonstrate that the testimony was admissible. But if Andrews believed that Junge's testimony went beyond the scope of the discovery he received, it was his obligation to bring this fact to the trial judge's attention. Because Andrews did not argue that he was surprised by the substance of Junge's testimony, even when he was prompted by the trial judge, we conclude that the trial judge did not abuse his discretion when he allowed Junge to testify.

### Conclusion

We therefore AFFIRM the superior court's judgment.

18. *Id.*

19. 65 P.3d 50, 55–56 (Alaska 2003).

20. *Id.* at 56 (quoting *Wakeford v. Rodehouse Rests. of Missouri, Inc.,* 154 Ill.2d 543, 182 Ill. Dec. 653, 610 N.E.2d 77, 80 (1993)).

21. *Getchell,* 65 P.3d at 56.

22. *Id.*