*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BONNIE L. LUTHER, | ) | |
| | ) | Supreme Court No. S-15588 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-12-10439 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STEVIE W. LANDER, | ) | |
| | ) | No. 7103 – May 13, 2016 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Appellant. Kimberlee A. Colbo, Hughes Gorski Seedorf Odsen & Tervooren, LLC, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Fabe, Maassen, and Bolger, Justices. [Winfree, Justice, not participating.]

FABE, Justice.

## I. INTRODUCTION

In November 2010 Stevie Lander was unable to complete a right turn on an icy road, and her vehicle slid into a car driven by Bonnie Luther. Although Luther reported no injuries at the scene of the accident, that evening she went to the emergency room for head and neck pain, and within weeks she began to suffer from lower back pain that prevented her from returning to her job as a flight attendant. Luther attributed her

pain to the accident and sued Lander for negligence in 2012. Lander admitted negligence and made an offer of judgment, which Luther did not accept. The case proceeded to trial in 2014, and the jury awarded Luther a total of $3,259 for past medical expenses, past wage and benefit loss, and past non-economic losses.

The superior court granted attorney's fees to Lander under Alaska Rule of Civil Procedure 68(b) and denied Luther's motion for a new trial. Luther appeals, arguing that the superior court erred by denying her a new trial based on inadequate damages and by excluding evidence of the amount of payments for medical treatment made by Luther's insurer. She also challenges the superior court's decision to grant attorney's fees based on billing records that were filed under seal. We conclude that it was error to exclude evidence of payments made for Luther's medical treatment by her insurer. But because that error was harmless, we affirm the final judgment entered by the superior court.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In November 2010 Bonnie Luther was stopped at a red traffic light, traveling southbound on Spenard Road in Anchorage. Stevie Lander was traveling westbound on Northern Lights Boulevard and attempted to make a right turn. Lander was unable to complete the turn on the icy road, and her SUV slid into the front driver's side of Luther's car. Photographic evidence revealed that the accident caused only minor damage to Luther's car: a small dent above the front driver's side tire. And there was no damage to Lander's SUV. The airbags did not deploy in either vehicle.

At the accident scene, Luther told a police offer that she was "fine" and did not require medical attention. But she went to the emergency room that evening because her head hurt and her neck was feeling "tight." At the hospital she was diagnosed with a cervical strain, prescribed pain medication, and discharged. Luther did not complain

of lower back pain on the day of the accident, and no diagnosis was made regarding her back. Luther testified that the symptoms she experienced immediately after the accident — head pain and tightness in her neck and shoulder — subsided within a few weeks to a month.

Luther had worked as a flight attendant for Alaska Airlines since 2007, and though she was not working at the time of the accident, as she was recovering from recent surgery, she was scheduled to return to work in December 2010. But two days after the accident, Luther was flying as a passenger on a flight to Hawaii when she first experienced pain in her back and into her left buttock. When she arrived home in Alaska near the end of November, Luther was diagnosed as "likely ha[ving] a muscle and ligament strain of her lower back . . . [and having possibly] wrenched the sacroiliac joint." An x-ray showed "no evidence of fracture," and Luther was referred to Orthopedic Physicians Anchorage. Sharon Sturley, a physician assistant at the practice, found no "acute fracture or dislocation" and noted that the x-rays showed evidence of "mild degenerative disc and joint disease."

Luther continued to experience lower back pain and to see Sturley for monthly visits through November 2011 with little notable change in her condition. In April 2011, an orthopedic specialist in the same practice as Sturley diagnosed Luther with a "small annular tear and a tiny disc protrusion" but noted that Luther's "bigger symptoms" were due to trochanteric bursitis and irritation of her sacroiliac joint. This doctor did not comment on the cause of either condition and suggested a steroid injection, which Luther declined. Between November 2011 and July 2012 Luther worked for the State of Alaska in Juneau, where she continued to see an orthopedic specialist. She was again diagnosed as having "likely [sacroiliac] joint pain" and "bilateral trochanteric bursitis." The doctor did not state that either affliction was caused by the car accident, and Luther again declined a recommended steroid injection in favor

of continued physical therapy. Throughout her treatment, Luther went to physical therapy and received acupuncture treatment, though her attendance at physical therapy was somewhat irregular. Both Sturley and the orthopedic specialist in Juneau provided Luther with monthly "work status reports" to be submitted to Alaska Airlines so that Luther could remain employed while on medical leave.

In July 2012 Luther returned to Anchorage and continued her work for the State. Luther was evaluated by James Glenn, another physician assistant in the orthopedic practice, in December 2012. Glenn reported that he was "somewhat perplexed" as to why Luther was still pursuing treatment two years after the accident without seeking "more aggressive" measures. He suggested various treatment options including injections, a new MRI, and x-rays, and he noted that Luther might consider a disc replacement in order to return to work as a flight attendant. Glenn refused to provide Luther with a work status report to indicate that Luther had a "full disability" that prevented her from returning to work. After her appointment with Glenn, Luther appears to have stopped seeking medical treatment, and in December 2012 she resigned from her position with Alaska Airlines.

B.     Proceedings

In October 2012 Luther filed a complaint in the superior court alleging that Lander was negligent and that her negligence had caused Luther to incur injuries resulting in ongoing medical expenses, lost wages, and pain and suffering. Lander admitted negligence and in December 2013 served an offer of judgment for $28,500 plus prejudgment interest, allowable Alaska Civil Rule 79 costs, and Alaska Civil Rule 82(b)(1) attorney's fees. Luther did not accept the offer, and the case proceeded to trial in March 2014.

At trial, Luther testified that the accident had left her unable to perform her duties as a flight attendant, but she did not call any of her own doctors or other expert

medical witnesses. Instead, Luther relied on her own testimony about her treatment and on her medical records. In support of her claim for damages for past medical expenses, Luther introduced evidence of the treatment she received after the accident. Some of the evidence she sought to introduce revealed that Luther's insurer, GEICO, paid some of Luther's medical expenses after the accident. The superior court granted Lander's request that the evidence be excluded. The superior court also excluded all evidence of the costs of the various treatment charges paid for by GEICO. But Luther was permitted to introduce evidence of the treatments themselves.

Luther testified that her total unpaid medical expenses amounted to $6,745.86. Lander, relying on the report and testimony of Dr. Bald, an independent medical examiner retained by Lander, asked the jury only to award Luther $809 for past medical costs, the amount Luther paid for treatment incurred with Orthopedic Physicians Anchorage in November 2011 and her acupuncturist in June 2011. Dr. Bald reported that Luther "did not incur anything more significant than a muscular strain-type injury" as a result of the car accident and that given the delay in the onset of symptoms, the accident could not have injured her sacroiliac joint or her lumbar spine. While Dr. Bald believed that the treatment Luther received during the year following the accident was "reasonable, appropriate, and necessary for treatment of injuries incurred in [the] accident," he concluded that it was improbable that Luther's persistent pain was attributable to the accident. He also found that by the time he examined Luther in 2013, she was "doing objectively very well" and should have been able to return to work, and that Luther's pre-accident surgery and inconsistent attendance at physical therapy could have slowed her recovery.

Luther also claimed lost wages and benefits of more than $50,000 for the time between the accident and November 2011. She testified that her base pay for the relevant time period would have been $28,872. But according to her W-2s, she made

considerably less than that in the years preceding the accident because she was subject to furloughs in 2009 and 2010 and was on medical leave from July 2010 through the time of the accident. Luther also claimed losses for various benefits she received as a flight attendant, including additional pay, an annual bonus, and flight benefits for herself, her friends, and her family. Acknowledging that it was difficult to value those additional benefits accurately, Luther estimated their value at a total of $15,100. Luther claimed $7,150.52 in payments she made for COBRA medical insurance and also requested damages for non-economic losses. Luther did not claim future economic losses.

Lander argued that the maximum Luther should be awarded for lost wages was $9,000, the average of Luther's annual earnings in 2008, 2009, and 2010. And Lander asserted that, because Luther had not worked enough hours in 2010 to qualify for medical insurance coverage from Alaska Airlines, she had already been paying for COBRA at the time of the accident. Lander argued that even if the accident had not occurred and Luther had returned to her job as a flight attendant in December 2010 as planned, she would have to have continued paying for her own insurance until she had worked long enough to qualify for coverage.

At the conclusion of the trial, the jury returned a verdict awarding Luther $809 for past medical expenses, $1,700 for past wage and benefit loss, $750 for past non-economic losses, and no amount for future non-economic losses, for a total award of $3,259. Lander moved for attorney's fees under Alaska Rule of Civil Procedure 68(b)(2)[1] and filed her billing records "under seal." This designation was later changed to "confidential."

---

[1] Rule 68(b) provides: "If the judgment finally rendered by the court is at least 5 percent less favorable to the offeree than the offer . . . the offeree . . . shall pay all costs as allowed under the Civil Rules and shall pay reasonable actual attorney's fees incurred by the offeror from the date the offer was made."

Luther moved for a new trial under Alaska Rule of Civil Procedure 59(a),[2] arguing that the jury's verdict was "manifestly unfair . . . under the evidence produced and the circumstances of the case." She argued that the jury's awards for past medical expenses and lost wages and benefits were insufficient, and she challenged the jury's award for pain, suffering, and loss of enjoyment of life as "ridiculously small." Luther also contended that the jury should have awarded her damages for future loss of enjoyment of life and the cost of COBRA insurance.

The superior court awarded Lander $8,590.75 in attorney's fees and entered final judgment, offsetting Luther's damages award and prejudgment interest such that Luther owed Lander a total of $6,494.17.[3]

Luther appeals, arguing that the superior court erred by (1) denying her request for a new trial on the ground of inadequate damages, (2) excluding evidence of $10,000 in medical expenses paid by Luther's insurer, GEICO, and (3) allowing Lander to file her billing records under seal.

## III.  STANDARD OF REVIEW

"We review the superior court's evidentiary rulings for abuse of discretion."[4]  "Under Alaska Civil Rule 61, errors in the admission or exclusion of

---

[2]     Rule 59(a) provides:  "A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury or in an action tried without a jury, if required in the interest of justice."

[3]     On the same day that the superior court entered final judgment, the court also inadvertently granted Luther's motion for a new trial.  Upon receipt of the order granting the new trial, Lander filed a motion for reconsideration.  Recognizing that it had not intended to grant the motion, the superior court withdrew its order granting a new trial on damages and subsequently denied the motion.

[4]     *Noffke v. Perez*, 178 P.3d 1141, 1144 (Alaska 2008) (citing *Bierria v.*
(continued...)

evidence are grounds for reversal only if failure to reverse 'appears to [this] court inconsistent with substantial justice.' "[5] "[W]e must disregard harmless errors that have no substantial effect on the rights of parties or on the outcome of the case."[6]

"A 'refusal to grant a new trial is reviewed under an abuse of discretion standard'; accordingly, we review the record 'in the light most favorable to the non-moving party.' "[7] "An abuse of discretion exists when evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust."[8] "We disturb the trial court's exercise of discretion only 'in the most exceptional circumstances to prevent a miscarriage of justice' "[9] and will not disturb a verdict "unless the evidence . . . is so clearly to the contrary that reasonable persons could not differ in their judgment."[10]

---

[4](...continued)
*Dickinson Mfg. Co.*, 36 P.3d 654, 657 (Alaska 2001)).

[5]     *Loncar v. Gray*, 28 P.3d 928, 930 (Alaska 2001) (alteration in original).

[6]     *Pedersen v. Blythe*, 292 P.3d 182, 184 (Alaska 2012) (first citing Alaska R. Civ. P. 61; then citing *Coulson v. Marsh & McLennan, Inc.*, 973 P.2d 1142, 1146 (Alaska 1999)).

[7]     *Getchell v. Lodge*, 65 P.3d 50, 53 (Alaska 2003) (quoting *Bierria*, 36 P.3d at 656).

[8]     *Id.* (quoting *Bierria*, 36 P.3d at 656).

[9]     *Id.* (quoting *Bierria*, 36 P.3d at 656).

[10]     *Pralle v. Milwicz*, 324 P.3d 286, 290 (Alaska 2014) (omission in original) (quoting *Alaska Democratic Party v. Rice*, 934 P.2d 1313, 1320 n.10 (Alaska 1997)).

"We review the decision to award attorney's fees for abuse of discretion and [will] overturn it only where the award is manifestly unreasonable."[11] "However, '[t]he independent standard of review . . . applies to considering whether the trial court properly applied the law when awarding attorney's fees.' "[12]

## IV. DISCUSSION

### A. The Superior Court's Exclusion Of Evidence Of Luther's Treatment Expenses Was Error, But The Error Was Harmless.

#### 1. Evidence of the full cost of Luther's medical treatment is relevant to a determination of the severity of her injuries.

Luther argues that the superior court erred by excluding evidence of the cost of her medical treatment paid by GEICO, Luther's insurer. Lander sought to exclude the evidence of Luther's medical bills on the ground that our decision in *Ruggles v. Grow* would prevent Luther from recovering any portion of the medical expenses paid by GEICO.[13] Luther countered that excluding the amount of the expenses would mislead the jury into believing that Luther's injuries were less serious because she had incurred few medical expenses. To address that problem, Luther requested a jury instruction that would inform jurors that her actual medical expenses exceeded those claimed at trial by $10,000, the amount of medical expenses paid by her own insurer.

The superior court ruled on the issue from the bench at the beginning of the trial, granting Lander's request to exclude the evidence. The superior court not only

---

[11]     *Alaska Fur Gallery, Inc. v. First Nat'l Bank Alaska*, 345 P.3d 76, 84 (Alaska 2015) (alteration in original) (quoting *Williams v. GEICO Cas. Co.*, 301 P.3d 1220, 1225 (Alaska 2013)).

[12]     *Baker v. Ryan Air*, 345 P.3d 101, 106 (Alaska 2015) (alterations in original) (quoting *DeNardo v. Cutler*, 167 P.3d 674, 677 (Alaska 2007)).

[13]     *See Ruggles ex rel. Estate of Mayer v. Grow*, 984 P.2d 509, 512 (Alaska 1999).

prohibited evidence of the source of the payments, but also prevented any evidence of the amounts charged for Luther's various treatments. For instance, one of Luther's exhibits was a chronological treatment history prepared by her orthopedic specialist, and the superior court's ruling required redaction of any treatment payments shown in that exhibit that were covered by GEICO. Luther argued for "either an exhibit or an instruction demonstrating what the costs were for each treatment" and suggested that Luther's inability to recover those expenses could be explained in a jury instruction. But the trial court confirmed that "payments by GEICO, costs, the amount of money paid by GEICO, billings paid by GEICO, mention of insurance, all that is disallowed."

The superior court did not elaborate on the basis for excluding even the amounts of the treatment costs, noting only that "based upon the previous rulings [the court had] already made, [the amount of the GEICO payments] should be taken out." Presumably, the superior court was mindful of the rule we set out in *Ruggles v. Grow*, where we held that once an insurer requests that a plaintiff "not . . . present its claim for medical expenses," the plaintiff "los[es] the right to present the claim" because "the subrogated claim belongs to the insurer."[14] Insurers may therefore seek reimbursement in one of two ways: The insurer can allow a plaintiff to pursue the subrogated claim along with the plaintiff's own claim and then seek reimbursement from the plaintiff, or the insurer can request that the plaintiff omit the subrogated claim, allowing the insurer to seek reimbursement in separate litigation.[15]

In this case, there is no question that GEICO requested that Luther refrain from including the insurer's medical-payment claim in her lawsuit and that under *Ruggles*, Luther therefore could not recover any portion of the $10,000 paid by GEICO.

---

[14]     *Id.*

[15]     *Id.*

But while Luther recognizes that she could not have recovered any of the $10,000, she contends that exclusion of the evidence of the cost of her treatment was prejudicial because it "appeared [to the jury] that [Luther] only incurred medical exp[e]nses in the amount of $809," the amount she paid out of pocket. Lander argues that evidence of the cost of Luther's treatment paid by GEICO was "irrelevant, misleading, and unfairly prejudicial." But Luther maintains that the cost incurred for treatment was relevant to the jury's determination of the severity of Luther's injuries and that without that information, the jury could have assumed that "the injuries must have been minor."

The definition of relevant evidence under Alaska Rule of Evidence 401 is broad.[16] For evidence to be considered relevant, it "need not be direct or conclusive; it need only have some tendency to advance the proposition for which it is offered."[17] The amount expended on medical treatment after an accident may bear on the severity of the plaintiff's injuries. Just as photographic evidence and testimony about the lack of serious damage to Luther's and Lander's vehicles was relevant as potentially reflecting the severity of the accident, so too is the amount of medical payments. It is then for the jury to determine the weight to be given that evidence.

Courts in other jurisdictions have addressed this issue and concluded that evidence of medical expenses is admissible when it is relevant to the severity of an injury. For example, the Georgia Supreme Court has held that "the amount of medical bills may be admissible on a claim of pain and suffering to show the seriousness of the

---

[16] *Marsingill v. O'Malley*, 128 P.3d 151, 158 (Alaska 2006) (citing *Van Meter v. State*, 743 P.2d 385, 392 (Alaska App. 1987)).

[17] *Id.* (quoting *McLaughlin v. State*, 818 P.2d 683, 687 (Alaska App. 1991)).

injury."[18] This is true even in cases in which "th[e] expenses should not have been awarded as damages."[19] Similarly, the Virginia Supreme Court concluded that "the trial court erred in excluding [a plaintiff's] medical bills" when the plaintiff "argued that the medical bills were offered solely to show that he was treated for physical injuries which, he contends, support[] his allegation that he endured pain and suffering."[20] That court recognized that the plaintiff "does not seek recovery for the amount of the medical bills; rather, he seeks recovery for the pain and suffering."[21] And the Montana Supreme Court reversed the trial court's exclusion of the amount charged for medical treatment, holding that "medical bills received by a tort victim can be relevant evidence of issues such as the nature and severity of the injuries."[22] A number of federal courts have also permitted evidence of the amount of medical expenses when introduced for the purpose of demonstrating the severity of an injury.[23]

---

[18]    *Warren v. Ballard*, 467 S.E.2d 891, 893 (Ga. 1996) (citing *Melaver v. Garis*, 138 S.E.2d 435, 436 (Ga. App. 1964)) (holding that a doctor's bill was admissible as illustrative of pain and suffering).

[19]    *College Park Cabs, Inc. v. Justus*, 488 S.E.2d 88, 89 (Ga. App. 1997).

[20]    *Parker v. Elco Elevator Corp.*, 462 S.E.2d 98, 100 (Va. 1995).

[21]    *Id.*

[22]    *Meek v. Mont. Eighth Jud. Dist. Ct.*, 349 P.3d 493, 495 (Mont. 2015) (citing *Chapman v. Mazda Motor of Am.*, 7 F. Supp. 2d 1123, 1125 (D. Mont. 1998)).

[23]    *See, e.g., Hannah v. Haskins*, 612 F.2d 373, 375 (8th Cir. 1980) (noting that while "[p]ayments received from collateral sources are not generally allowed to be introduced into evidence for purposes of reducing a damage award or showing wrongdoing[,] . . . [e]vidence relating to such payments . . . has been held to be admissible for the purpose of establishing the extent of injury") (internal citations omitted); *Brice v. Nat'l R.R. Passenger Corp.*, 644 F. Supp. 220, 224 (D. Md. 1987) (holding that the amount of medical expenses incurred by a plaintiff in a workplace

(continued...)

We have not directly considered the question whether the amount of medical payments is admissible for the purpose of demonstrating the severity of an injury. But we pointed out in *Ruggles v. Grow* that although the superior court ruled that the plaintiff's medical expenses must be deducted from her recovery, it nevertheless allowed evidence of the treatment expenses.[24] Though the admissibility of that evidence was not at issue on appeal, we recognized that the payments had been admitted "as evidence bearing on the severity of [the plaintiff's] injury."[25]

In *Ruggles* we went on to hold that a plaintiff may not bring a claim that the insurer sought to control.[26] But to exclude all evidence of medical costs when an insurer has made payments and subsequently requests to control the claim would create an unintended dichotomy. Plaintiffs involved in litigation in which their insurers do not make such a request would be able to introduce evidence of all medical expenses included in their claims: "If the insurer does not object, the insured may include the subrogated claim in its claim . . . ."[27] But in cases in which an insurer "actively requests that the plaintiff not pursue her subrogation claim,"[28] a plaintiff would be prohibited from

---

**[23]**(...continued)
accident was relevant to "the determination of the full extent and nature" of the plaintiff's injuries).

**[24]** *Ruggles ex rel. Estate of Mayer v. Grow*, 984 P.2d 509, 511 (Alaska 1999).

**[25]** *Id.*

**[26]** *Id.* at 512.

**[27]** *Id.*

**[28]** *O'Donnell v. Johnson*, 209 P.3d 128, 135 (Alaska 2009) (holding that the common fund doctrine, which allows a litigant or lawyer who recovers a common fund to seek reasonable attorney's fees from the entire fund, does not apply when an insurer
(continued...)

presenting evidence of the expense of medical treatment. *Ruggles* should not be interpreted to produce such an anomalous result.

Because evidence of the amount of medical bills is relevant to the severity of a plaintiff's injury, we conclude that such evidence cannot be excluded solely on the ground that the plaintiff cannot recover the money. Thus, our decision in *Ruggles* does not preclude the introduction of evidence of the amounts of insurance payments for the purpose of demonstrating the severity of an injury.

**2.      The probative value of the evidence of Luther's treatment costs is not outweighed by any danger of prejudice.**

Given that Luther's evidence of the amounts charged for medical treatment was relevant, the next step in the analysis is whether the evidence of the amount of the payments should have been "excluded [because] its probative value [was] outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[29]   Lander argues that to the extent that evidence of the cost of Luther's treatments may have had "minimal probative value," that value was "far outweighed" by its prejudicial effect and tendency to confuse and mislead the jury. But Lander does not explain why admission of the evidence would have been prejudicial to her. Lander was free to argue at trial that the treatments Luther received were unnecessary or were not attributable to the accident; indeed, she did precisely that.

---

[28](...continued)
actively requests that a plaintiff refrain from pursuing a subrogated claim).

[29]      Alaska R. Evid. 403. We have observed that "this balancing test measures the probative value of the evidence against its deleterious effects. Where the prejudicial effect is '*demonstrably greater*,' the evidence must be excluded." *Conley v. Alaska Commc'ns Sys. Holdings, Inc.*, 323 P.3d 1131, 1143 n.3 (Alaska 2014) (emphasis added) (quoting Commentary Alaska E.R. 403).

In support of her argument that the evidence could have misled and confused the jury, Lander relies on our decision in *Loncar v. Gray*.[30] The plaintiff in that personal injury case sought to introduce evidence of her own Medicare and Medicaid payments in part because she claimed the evidence was relevant to her damages because she suffered humiliation from accepting public assistance.[31] The superior court excluded the evidence of her coverage, noting that while the plaintiff could not introduce evidence of Medicaid payments, she could "testify about her medical condition, . . . her *medical bills*[,] . . . her difficulty in obtaining medical care, . . . *her bills and the amount that has been run up* without mentioning insurance."[32] We affirmed, reasoning that evidence of Medicaid payments would have "opened [the door] to evidence from both sides on the larger issue of insurance payments — and this potentially very large body of evidence would 'create more confusion of the issues than . . . any probative value it may have.' "[33] But here, unlike the plaintiff in *Loncar*, Luther was prohibited from entering into evidence even the *amounts* charged for her medical treatment. Lander's concerns about confusing the jury could easily have been alleviated by permitting evidence regarding the amounts of the medical bills while excluding their payment source.

The superior court could have taken several approaches to ensure that the jury did not erroneously award Luther any portion of the subrogated claim. First, the superior court could have instructed the jury not to award damages for the medical expenses that had already been paid by Luther's insurer. This was the remedy that Luther suggested to the superior court.

---

[30]     28 P.3d 928 (Alaska 2001).

[31]     *Id.* at 933.

[32]     *Id.* (alteration omitted) (emphases added).

[33]     *Id.* (omission in original).

Second, the superior court could have instructed jurors not to award damages for treatment undertaken after a particular date, which would necessarily preclude an award for expenses covered by the insured party's medical-payment coverage.

Third, the superior court could have allowed the jury to determine the total medical expenses attributable to the accident and then reduced that award to prevent recovery for payments made by GEICO. We have concluded that this approach is appropriate in the context of a damages cap. In *Kodiak Island Borough v. Roe*, we determined that the superior court improperly instructed the jury on a statutory non-economic damages cap in an intentional tort case: While "[t]he legislature may limit the amount of damages that can be awarded, . . . it is for the jury to determine the extent of the plaintiff's injury and the damage award that will make [him or] her whole."[34]

Any of these approaches would allow a plaintiff to introduce evidence of the full cost of medical treatment without allowing the plaintiff to recover any costs precluded by *Ruggles*, leaving the insurer free to pursue its separate litigation.

### 3. The superior court's exclusion of evidence of the full cost of treatment was harmless error.

Having concluded that the superior court erred by excluding the evidence of the cost of Luther's medical treatment covered by GEICO, we must next consider whether that error warrants a new trial. Unless we can determine that the exclusion of the evidence had a "substantial effect" on the outcome of the trial,[35] we must conclude that the error was harmless. While Luther was improperly precluded from presenting

---

[34] 63 P.3d 1009, 1016-17 (Alaska 2003).

[35] *Pedersen v. Blythe*, 292 P.3d 182, 184 (Alaska 2012) (first citing Alaska R. Civ. P. 61; then citing *Coulson v. Marsh & McLennan, Inc.*, 973 P.2d 1142, 1146 (Alaska 1999)).

-16- **7103**

evidence of all of her medical treatment expenses because some were paid by GEICO, Luther was free to admit her medical records and to testify about the type of medical treatment she received from the date of the accident through trial. It was Luther who elected not to present a single medical expert to support her claim that the accident caused her persistent lower back pain. And the medical records reflected that even Luther's own orthopedic specialist found her continued need for treatment "perplex[ing]." Lander, on the other hand, presented the testimony of Dr. Bald, who undermined any causal connection between the accident and Luther's continuing pain, along with evidence indicating that Luther failed to mitigate her damages.

In light of the evidence presented and the trial strategies employed in this case, we cannot conclude that admission of the amount of the GEICO payments would have had a substantial effect on the outcome of the trial. We therefore conclude that the error was harmless.

**B.      The Superior Court Did Not Err By Denying Luther's Motion For A New Trial.**

Luther also argues that the superior court should have granted her motion for a new trial because the jury did not award adequate damages and "[t]he result reached by the jury was manifestly unfair." But because there was sufficient evidence to support the jury's verdict, we affirm the trial court's ruling.

Luther has failed to establish that the circumstances in this case constitute the type of "exceptional circumstances" in which we will reverse a trial court's denial of a new trial "to prevent a miscarriage of justice."[36] We have held that "[i]nadequacy of a jury verdict is grounds for a new trial in cases where negligence is conceded or proved,

---

[36]      *Getchell v. Lodge*, 65 P.3d 50, 53 (Alaska 2003) (quoting *Bierria v. Dickinson Mfg. Co.*, 36 P.3d 654, 656 (Alaska 2001)).

but *no damages are awarded*."[37] But in cases "where the jury makes *some* award . . . where negligence is conceded or proved, we have not reversed that award as inadequate."[38] Here, the jury did award damages. Because "reasonable minds [can] differ on the causal relationship between [an] accident and [a plaintiff's] injuries . . . [t]he resolution of [the] issue [of damages] turns upon the credibility of the witnesses."[39] Here, the jury may not have been persuaded that the accident cost Luther as much as she claimed in medical expenses, lost pay, and pain and suffering.

Luther relies on several decisions in which we reversed a superior court's denial of a new trial because of inadequate damage awards, but those cases are unpersuasive here. For example, in *Pugliese v. Perdue*, we reversed an award of no damages where evidence that the accident had caused the injury was indisputable.[40] And in *Fancyboy v. Alaska Village Electric Cooperative, Inc.*, the jury awarded damages for property loss and medical expenses arising out of a fire that was determined to be partially caused by the defendant, but it gave no award for non-economic damages despite the fact that the plaintiffs suffered "painful burns and . . . loss of consortium."[41] But here, the jury made awards for both past medical expenses and non-economic damages. And the cases cited by Luther in which we upheld a superior court judge's

---

[37] *Glamann v. Kirk*, 29 P.3d 255, 263 (Alaska 2001) (emphasis added).

[38] *Id.* (emphasis added); *see also Hutchins v. Schwartz*, 724 P.2d 1194 (Alaska 1986) (affirming a jury award of $250 for lost earnings rather than the $18,500 the plaintiff claimed; $0 instead of $75,000 for lost enjoyment of life and physical impairment; and $937 for past medical expenses instead of the claimed $20,794).

[39] *Hutchins*, 724 P.2d at 1203.

[40] 988 P.2d 577, 583 (Alaska 1999).

[41] 984 P.2d 1128, 1136 (Alaska 1999).

discretionary decision to *grant* a new trial on the ground of an inadequate award of damages[42] support the proposition that there must be "exceptional circumstances . . . which would require us to overrule the superior court's discretionary grant of a new trial."[43]  Such circumstances do not exist in this case because a review of the record reveals that there was sufficient evidence presented to support the jury's award.

First, Luther challenges the jury's decision to award her only $809 for past medical expenses, arguing that she should have been awarded $1,578.86, the "undisputed total of past medicals due for that year."  But the jury was free to make its own assessment of the amount of medical expenses that were attributable to the accident.  As Lander points out, Dr. Bald qualified his statement that one year was a reasonable treatment period by observing that he was "[g]iving Ms. Luther quite a bit of benefit of the doubt."  And the jury could have relied on Dr. Bald's testimony that he "[could not] attribute [Luther's] complaints of intermittent pain in her buttock to [the] accident."  The jury could also have determined that Luther failed to mitigate her damages:  Dr. Bald testified that Luther's failure to attend all physical therapy sessions could have prolonged her pain, and Luther conceded that she twice refused steroid injections recommended by her doctors.  Finally, we have recognized that where the damage to the vehicle is minor, that evidence "can be probative of the force with which the accident occurred[] and the likelihood that it caused serious harm to" a party.[44]  So the jury could have considered that evidence in reaching the conclusion that Luther's harm from the accident was minor.

---

[42]    *See Buoy v. ERA Helicopters, Inc.*, 771 P.2d 439 (Alaska 1989); *Sebring v. Colver*, 649 P.2d 932 (Alaska 1982).

[43]    *Buoy*, 771 P.2d at 442.

[44]    *Marron v. Stromstad*, 123 P.3d 992, 1009 (Alaska 2005).

Second, the jury awarded Luther $1,700 in lost wages and benefits despite her claimed loss of $51,122.52. Given the variable nature of Luther's compensation as a flight attendant, a broad range of awards could have been supported by the evidence. We need only determine whether there was sufficient evidence to support the jury's award, and we conclude that there was. In light of the testimony and evidence presented at trial, it is plausible that the jury's award reflected its belief that the accident did not actually prevent Luther from returning to work for the full year. Dr. Bald testified that Luther could return to work "[i]f she so desired," and Glenn refused to sign her "total disability" work status reports. And again, the jury may have considered evidence presented by Lander of Luther's failure to mitigate and the possibility raised by Lander at trial that even if Luther had returned to work in December 2010, she could have been placed on additional furloughs. Similarly, the jury's decision not to compensate Luther for her COBRA payments was supported by evidence that her variable work schedule may not have entitled her to employer-provided health insurance. Thus, there was sufficient evidence to support the jury's award of $1,700.

Finally, Luther claims that the amount awarded for her pain and suffering resulting from the accident was inadequate. But given the subjective nature of a jury's award of non-economic damages, we cannot conclude that the award was unsupported by the evidence. While Luther testified that her injuries have caused interrupted sleep and pain when sitting for long periods of time, Dr. Bald testified that "her examination was completely and totally normal," and Glenn was "perplexed" by the fact that she was still requesting disability status two years after the accident.

Because there was evidence to support the jury's award of damages and our precedent does not warrant a reversal of the superior court's denial of Luther's motion for a new trial, we affirm that denial.

**C.    The Superior Court Did Not Err In Its Order Granting Attorney's Fees Because Luther Had Access To All Of Lander's Billing Records.**

Finally, Luther argues that the superior court erred in granting Lander attorney's fees under Rule 68 because Lander filed the documents supporting her request for fees under seal.  But while the billing records were filed "under seal," the court promptly redesignated them as "confidential" in April 2014, providing the parties with access to the documents.[45]  And in any event, Lander provided all of the billing records in support of her motion directly to Luther.  Thus, Luther does not claim that she was denied access to the supporting billing documentation, and as Lander points out, "Luther's ability to contest or respond to the [motion] was in no way burdened" by the fact that the documentation was filed under seal and designated as confidential by the court.

Luther makes a persuasive policy argument against the ability of a prevailing party to designate as confidential billing records in support of a motion for attorney's fees:  She argues that this practice could place an undue burden on parties opposing those fees by preventing them from mentioning the confidential information in their opposition to the motion.  But here, Luther did not oppose the reasonableness of the hourly rates or the amount of time expended, and she expressly allowed that the award of attorney's fees was "within the discretion of [the superior court]."  Thus, Luther's argument is hypothetical, and we do not need to consider it here.

Luther also argues that "as a general principle, court proceedings are open" and that there is no reason documents supporting a motion for attorney's fees should be

---

[45]    Under Alaska Administrative Rule 37.5(c), " '[c]onfidential' means access to the record is restricted to:  the parties to the case; counsel of record; individuals with a written order from the court authorizing access; and court personnel for case processing purposes only," while " '[s]ealed' means access to the record is restricted to the judge and persons authorized by written order of the court."

treated differently. She maintains that the information should be public as a matter of policy because knowledge of the prevailing hourly rate for attorneys may be useful in future cases. This may be true, but Luther does not suggest that the trial court has considered or denied any request for access to these documents. And the trial court "may, by order, limit access to public information in an individual case record by sealing or making confidential the case file [or] individual documents in the case file."[46] Absent any indication that Luther or any other party has requested or been denied access to these documents, we cannot conclude that the superior court abused its discretion.

## V. CONCLUSION

For the reasons discussed above, we AFFIRM the final judgment of the superior court.

---

[46] Alaska Admin. R. 37.6(a).