NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CHERYL MARKS, | ) | |
| | ) | Supreme Court No. S-17512 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-18-04855 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| JAVAN PLUNKETT, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1795 – October 14, 2020 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Jennifer Henderson, Judge.

Appearances: Jeffrey J. Barber, Barber & Associates, Anchorage, for Appellant. Michael J. Hanson, Call & Hanson, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Stowers, Justice, not participating.]

## I.    INTRODUCTION

A woman injured her shoulder when she slipped and fell in the parking lot of her Anchorage apartment complex. Surgery and physical therapy allowed her to regain most of the functioning in her arm and shoulder. She sued her landlord, arguing that his negligence caused her injury. A jury awarded medical expenses and past non-economic damages, but declined to award damages for future losses. The woman moved for a new trial on the issue of non-economic damages; the superior court denied her

---

\*    Entered under Alaska Appellate Rule 214.

motion.  She appeals, arguing that the superior court erred in (1) declining to give her proposed jury instructions on non-economic damages and (2) denying her motion for a new trial on the issue of non-economic damages.  For the reasons that follow, we affirm the superior court's jury instructions and final judgment.

## II.    FACTS AND PROCEEDINGS

In December 2017 Cheryl Marks, a tenant, slipped and fell in the parking lot of an apartment complex owned by Javon Plunkett.  After a referral from urgent care, Marks was treated for a broken proximal humerus.[1]

Marks underwent orthopedic surgery on December 27.  After the surgery Marks reported decreased pain and improved functioning in her arm and shoulder.  At a two-week post-operative appointment her surgeon noted that "she is actually doing quite well and is very pleased that she fixed it because her shoulder is really much better and her mobility is much improved as well.  She is taking minimal pain medication today."

At her first appointment in late January 2018, the physical therapist noted that her "impairments [were] limiting her ability to dress, reach, perform household chores, work, exercise and sleep."  At this point, Marks was back at work and not taking pain medication.  Throughout February and March 2018, Marks attended physical therapy twice a week.  As physical therapy progressed, her pain levels, shoulder mobility, and arm function improved.  Marks ceased physical therapy in April 2018.  She

---

[1]    A proximal humerus fracture is a break in the upper portion of the arm, affecting the ball and socket where the arm meets the shoulder.  Danielle Campagne, *Proximal Humeral Fractures (Shoulder Fracture)*, Merck Manual for the Professional, https://www.merckmanuals.com/professional/injuries-poisoning/fractures/proximal-humeral-fractures (last updated July 2019).

went on vacation with her family, and, upon returning, did not resume physical therapy or seek further medical care.

By November 2018 Marks said she could perform all of the activities that she had been able to perform prior to her accident in December 2017. She stated that her arm functioned at 75 percent of its prior capacity; that she had lost "range of motion" and had to adapt her approach to some daily activities, chores, and travel; and that she believed her recovery had reached a plateau and she would not gain further mobility in her shoulder. She occasionally used over-the-counter medication, but "[n]ot very often" and generally after "a very strenuous day or a cold day."

## A.    Proceedings

In February 2018 Marks sued Plunkett in superior court. She alleged that on December 8, 2017, Plunkett and his agents had negligently failed to reasonably monitor snow and ice conditions in common areas of the building. Marks sought damages for medical expenses, past non-economic losses, and future non-economic harm.

At trial, both Marks and Plunkett filed proposed jury instructions. Marks requested modifications to the standard Alaska Civil Pattern Jury Instruction for non-economic losses, ACPJI 20.06. Plunkett objected to Marks's instruction as a "[misstatement of] pattern instruction 20.06 and the law." Marks's proposed instruction on non-economic damages read as follows (emphasis added):

> If you find in favor of the plaintiff, then you *must* determine a fair amount to compensate her for pain and suffering, loss of enjoyment of life, physical impairment and inconvenience resulting from the injury. Such an award *must* fairly compensate the plaintiff for the non-economic losses she has experienced from the date of the injury until the date of trial and for non-economic losses that she is reasonably probable to experience in the future. In deciding how long

the plaintiff may experience such losses in the future, you may need to consider her current life expectancy.

The law does not establish a definite standard for deciding the amount of compensation for non-economic losses, and the law does not require that any witness testify as to the dollar value of non-economic losses. You must exercise your reasonable judgment to decide a fair amount in light of the evidence and your experience.

Alaska Civil Pattern Jury Instruction (ACPJI) 20.06 "Non-Economic Losses" is as follows (emphasis added):

The (first, second, etc.) item of loss claimed by the plaintiff is for non-economic losses. You *may* award the plaintiff a fair amount to compensate the plaintiff for [pain and suffering] [loss of enjoyment of life] [disfigurement] [physical impairment] [other qualifying loss] [and] [inconvenience] resulting from the injury.

Such an award *should* fairly compensate the plaintiff for the non-economic losses (he) (she) has experienced from the date of the injury until the date of trial [and for non-economic losses that (he) (she) is reasonably probable to experience in the future]. [In deciding how long the plaintiff may experience such losses in the future, you may need to consider (his) (her) current life expectancy.]

[If a person's injury requires medical care, that injury is necessarily accompanied by some amount of pain and suffering. Therefore, if you award the plaintiff any damages for past or future medical expenses, you *must* also award damages for pain and suffering. This means that if you award any medical expenses to the plaintiff, you cannot award zero for the plaintiff's non-economic damages. If you do so, the case will be returned to you for further deliberation.]

The law does not establish a definite standard for deciding the amount of compensation for non-economic losses, and the law does not require that any witness testify as to the dollar value of non-economic losses. You must

exercise your reasonable judgment to decide a fair amount in light of the evidence and your experience.

Marks also requested a separate jury instruction providing a definition of loss of enjoyment of life. Plunkett objected on the grounds that it "is not a pattern instruction approved by the Alaska Supreme Court," is "confusing," and "mis-states [the relevant] pattern instruction." Marks's proposed instruction read:

> The plaintiff claims damages for loss of enjoyment of life. Damages for loss of enjoyment of life compensate the injured person for the limitations placed on his ability to enjoy the pleasures and amenities of life. This type of damage relates to daily life activities that are common to most people, including recreations, family activities, or inability to continue in a particular career. Damages for loss of enjoyment of life are separate from pain and suffering.

The superior court discussed the proposed jury instructions on the record with counsel for both parties. Plunkett's attorney challenged Marks's proposed modification of pattern instruction 20.06 and Marks's addition of a separate instruction with a detailed definition for loss of enjoyment of life.

The superior court ultimately gave an instruction on non-economic damages modeled on ACPJI 20.06. The instruction included the relevant statements on future non-economic damages and explained the need to award non-economic damages alongside any award for medical expenses.[2] The superior court did not adopt Marks's

---

[2] This instruction was preceded by an instruction regarding damages, patterned on ACPJI 20.01A, that stated:

> If you decide in favor of the plaintiff, you must then decide how much money will fairly compensate the plaintiff . . . . For each item of loss, you must decide that it is more likely true than not true that 1. the plaintiff had such an item of loss or is reasonably probable to have such an item of loss

(continued...)

proposed modifications to ACPJI 20.06. The superior court also declined to issue an instruction defining the loss of enjoyment of life.

In closing arguments, Marks's attorney addressed non-economic damages generally, and asked that jurors award her $200,000 in past non-economic damages and $200,000 in future non-economic damages. Other than three vague references to Marks's future "limitations," he did not mention the loss of enjoyment of life as a category of non-economic damages.

In May 2019 the jury returned a verdict finding that Plunkett had been negligent, and that his negligence was a substantial factor in causing harm. However, the jury found that Plunkett was only 28% responsible for Marks's accident, and that Marks herself was 72% responsible. The jury awarded a total of $80,340.67 in damages: $64,340.67 in past economic loss (medical expenses) and $16,000 in past non-economic damages. The jury did not award damages for future non-economic losses.

Marks filed a timely motion for new trial on non-economic damages. She argued that the jury's award of zero future non-economic damages was unreasonably low and against the weight of the evidence. She also claimed that the superior court erred in declining to utilize her proposed jury instructions on non-economic damages and loss of enjoyment of life.

---

[2]    (...continued)
in the future, and 2. the conduct of the defendant or one of his agents was a substantial factor in causing the loss.

If both of these things are more likely true than not true, you must then decide how much money will fairly compensate the plaintiff that item of loss. If you do not conclude that both of these things are more likely true than not true for a particular item of loss, you may not make an award for that loss.

The superior court issued an order denying the motion for new trial. The superior court stated that "[e]vidence in the record is sufficient such that a reasonable juror could reach the conclusion that the trial jurors did in awarding past non-economic damages as they did, and in concluding that Ms. Marks did not establish her claim for future non-economic damages." The superior court entered a final judgment affirming the jury's award and adding costs, attorney's fees, and prejudgment interest.

Marks appeals.

## III.   STANDARD OF REVIEW

We afford substantial deference to a superior court's grant or refusal of a motion for new trial.[3] "A 'refusal to grant a new trial is reviewed under an abuse of discretion standard'; accordingly, we review the record 'in the light most favorable to the nonmoving party.' "[4]

"Jury instructions involve questions of law to which we apply our independent judgment."[5] When utilizing the de novo standard of review we adopt "the rule of law most persuasive in light of precedent, reason, and policy."[6]

---

[3]    *Buoy v. ERA Helicopters, Inc.*, 771 P.2d 439, 442 (Alaska 1989) (citing *Montgomery Ward v. Thomas*, 394 P.2d 774, 774-75 (Alaska 1964)).

[4]    *Luther v. Lander,* 373 P.3d 495, 500 (Alaska 2016) (quoting *Getchell v. Lodge*, 65 P.3d 50, 53 (Alaska 2003)).

[5]    *Gov't Emps. Ins. Co. v. Gonzalez*, 403 P.3d 1153, 1160 (Alaska 2017) (quoting *City of Hooper Bay v. Bunyan*, 359 P.3d 972, 978 (Alaska 2015)). We "review jury instructions de novo when a timely objection is made." *Cummins, Inc. v. Nelson*, 115 P.3d 536, 541 (Alaska 2005). Otherwise, if there was no timely objection, we "will only review instructions for plain error." *Id.* The record reflects that Marks argued for her proposed instructions to be used instead of the pattern instructions.

[6]    *Gov't Emps. Ins. Co.*, 403 P.3d at 1160.

-7-                                                      1795

## IV. DISCUSSION

### A. The Jury's Verdict Was Supported By Evidence And Was Not Plainly Unreasonable Or Unjust.

The jury awarded Marks medical expenses and past non-economic damages, but no damages for future harm. Marks argues that the jury's award of zero future non-economic damages merited a new trial, and that the superior court's denial of a new trial therefore constitutes an abuse of discretion.

The grant or denial of a motion for a new trial rests in the sound discretion of the trial court.[7] The court has abused its discretion in denying a motion for a new trial when "evidence to support the verdict was completely lacking or so slight and unconvincing as to make the verdict plainly unreasonable and unjust."[8] "We disturb the trial court's exercise of discretion only 'in the most exceptional circumstances to prevent a miscarriage of justice.' "[9] We "will not disturb a verdict 'unless the evidence . . . is so clearly to the contrary that reasonable persons could not differ in their judgment.' "[10]

Generally "the subjective nature of a jury's award of non-economic damages" merits deference to its decision regarding whether evidence warranted an award of damages, so long as that interpretation was reasonable.[11] We have previously

---

[7] *Luther,* 373 P.3d at 500; *see also Buoy*, 771 P.2d at 445 ("If there is an evidentiary basis for the jury's decision, the denial of a new trial *must* be affirmed." (emphasis added) (quoting *Hayes v. Xerox Corp.*, 718 P.2d 929, 933 (Alaska 1986))).

[8] *Buoy*, 771 P.2d at 445 (quoting *Hayes*, 718 P.2d at 933).

[9] *Luther,* 373 P.3d at 500 (quoting *Getchell*, 65 P.3d at 53).

[10] *Id*. (alteration in original) (quoting *Pralle v. Milwicz*, 324 P.3d 286, 290 (Alaska 2014)).

[11] *Id*. at 505. *Luther* offers helpful precedent: The *Luther* jury returned a
(continued...)

overturned jury verdicts that failed to award damages when negligence and causation were conceded and evidence of harm was substantial and uncontroverted.[12]  However, we have also previously held that as long as there is an evidentiary basis for the jury's decision, the superior court's denial of a new trial must be affirmed.[13]

Marks argues that evidence at trial clearly established future non-economic harm warranting an award of damages.  Marks argues that even if the jury did not find evidence that she could expect future pain and suffering, it should have awarded damages for loss of enjoyment of life, physical impairment, and inconvenience.  Marks points to her trial testimony regarding her reduced capacity to perform tasks with her left arm.  Marks implies that her ongoing limited range of motion effectively mandated some award of future non-economic damages.

However, the jury's decision to award zero future non-economic damages was supported by adequate evidence.  Marks admitted she could perform all the activities that she had been able to perform prior to her injury.  She had no plans for future medical

---

[11]     (...continued)
verdict awarding a much lesser amount than requested for past non-economic losses and no amount for future non-economic losses.  *Id.*  The plaintiff alleged the superior court erred in denying a motion for new trial, arguing the damages for non-economic losses were inadequate given her testimony that her injuries caused interrupted sleep and pain when sitting for long periods of time.  *Id.*  Pointing to a doctor's testimony describing the plaintiff's recent health as "normal," we concluded reversal was not warranted because evidence existed to support the jury's damages award.  *Id.*

[12]     "[W]here negligence and causation of compensable physical injury are conceded or proved, and where evidence of at least some pain and suffering is substantial and uncontroverted, some damages ordinarily must be awarded."  *Grant v. Stoyer*, 10 P.3d 594, 598 (Alaska 2000) (reversing denial of new trial when jury failed to award any damages, including pain and suffering, for undisputed injuries caused by accident).

[13]     *Luther*, 373 P.3d at 500; *see also Buoy*, 771 P.2d at 445.

treatment. She was active and living independently, she had returned to work, and she was performing her own chores. Because this evidence supports the jury's decision not to award Marks future non-economic damages, we affirm the denial of Marks's motion for a new trial.

## B. The Superior Court's Jury Instructions Adequately Informed The Jury Of Relevant Law.

Marks argues the superior court's instructions on non-economic damages failed to inform the jury of relevant law and deprived her of an instruction on her theory of the case.

"When reviewing a trial court's denial of a proposed instruction, our inquiry focuses upon whether the instructions given, when read as a whole, adequately inform the jury of the relevant law."[14] "An error in jury instructions is grounds for reversal only if it caused prejudice."[15] Prejudice occurs if "the jury may have returned a different verdict" had the erroneous instruction been corrected.[16] "[A] plaintiff is generally entitled to a jury instruction 'consonant with the theory of [the] case' if the evidence supports the plaintiff's theory."[17] "[F]ailure to give such an instruction is

---

[14] *Gov't Emps. Ins. Co. v. Gonzalez,* 403 P.3d 1153, 1162 n.22 (Alaska 2017) (quoting *City of Hooper Bay v. Bunyan*, 359 P.3d 972, 978 (Alaska 2015)) (assessing whether instructions adequately informed the jury of relevant law when applying de novo review to jury instructions).

[15] *Id.*

[16] *Id.* at 1162 n.23 (quoting *Parnell v. Peak Oilfield Serv. Co.*, 174 P.3d 757, 765 (Alaska 2007)).

[17] *HDI-Gerling Am. Ins. Co. v. Carlile Transp. Sys., Inc.*, 426 P.3d 881, 887 (Alaska 2018) (alteration in original) (quoting *Parnell*, 174 P.3d at 764).

reversible error when the jury instructions as a whole allow the verdict to rest on an erroneous legal theory."[18]

### 1. The pattern instruction's permissive language regarding non-economic losses did not mislead the jury.

Marks argues that the superior court failed to adequately inform the jury of relevant law when it rejected her proposed instruction on non-economic damages and instead followed the ACPJI. Marks argues that the judge should have instructed the jury that they "must determine a fair amount to compensate her" and that "[s]uch an award must fairly compensate [her] for [her] non-economic losses." The superior court instructed the jury that it "*may* award [her] a fair amount" and that "[s]uch an award *should* fairly compensate [her] for [her] non-economic losses."[19] Marks points to the permissive language in this instruction and contends that such language suggests juries can decide whether or not to award damages even if non-economic harm has occurred. However, this statement was preceded by a general instruction that jurors "must . . . decide how much money will fairly compensate the plaintiff."

The superior court's damages instructions included both a general instruction regarding the need to award damages if jurors found that the defendant had caused a harm and an explanation of how to consider non-economic damages. These instructions clearly directed the jurors to award damages if they found the defendant's negligence caused the plaintiff's harm.[20] The use of permissive language simply reflects that a jury must be convinced of the existence of harm before awarding damages. And the jury's verdict — awarding medical expenses and past non-economic damages, but

---

[18] *Id.*

[19] *See* ACPJI 20.06 (emphasis added).

[20] *Id.*

no future damages — is supported by the evidence in the record.[21] We thus conclude that the instructions on non-economic damages as given by the superior court did not mislead the jury on the relevant law.

### 2. Marks was not entitled to additional jury instructions regarding the loss of enjoyment of life.

At trial, Marks proposed a jury instruction offering a detailed explanation of the term "loss of enjoyment of life." The superior court declined to give this instruction, determining that the pattern instructions were adequate and that adding a detailed definition highlighting a specific type of damages might prejudice the jury.[22] Instead, loss of enjoyment of life was included alongside other potential non-economic damages in the superior court's jury instructions, which were modeled on ACPJI 20.06.[23]

Marks argues that the superior court's decision not to adopt her proposed instruction on loss of enjoyment of life constituted a failure to adequately instruct jurors of law relevant to her theory of the case. Marks points to our ruling in *Babinec v.*

---

[21] Marks was injured and underwent surgery in December 2017. She was back at work, living independently, and not taking pain medication by January 2018. By February, she could drive her car. She attended physical therapy regularly in February and March. She went on vacation with her family in April, and after returning to Anchorage did not continue physical therapy or seek other medical treatment.

[22] When discussing the proposed instructions with attorneys for both parties, the superior court stated that Marks's proposed instruction would "emphasize perhaps more than is appropriate one aspect of the damages being sought."

[23] The list of items included in the pattern instruction's description of non-economic loss is derived from the controlling AS 09.17.010(a), which states that "damages for non-economic losses shall be limited to compensation for pain, suffering, inconvenience, physical impairment, disfigurement, loss of enjoyment of life and other non-pecuniary damage."

*Yabuki*,[24] arguing that like the *Babinec* plaintiff, she suffered from non-economic damages that could constitute loss of enjoyment of life, and that the superior court should therefore have included a detailed definition of loss of enjoyment of life in the jury instructions.

Marks's suggestion that *Babinec* required the superior court to allow her jury instruction is inaccurate. In *Babinec* we accepted a jury instruction that included detailed examples illustrating what might constitute loss of enjoyment of life; we determined that offering such examples did not invite double recovery.[25] However, we did not hold that it was necessary to explicitly define loss of enjoyment of life in order to accurately inform the jury of the relevant law.[26]

Ordinarily "a plaintiff is . . . entitled to a jury instruction 'consonant with the theory of her case' if the evidence supports the plaintiff's theory."[27] But there was very little support for the instruction Marks proposed. Her proposed instruction would tell the jury that loss of enjoyment of life refers to "limitations placed on . . . daily life activities that are common to most people, including recreations, family activities, or inability to continue in a particular career." But there was no testimony establishing that Marks was unable to participate in any of these activities or that her left arm's

---

[24] 799 P.2d 1325, 1336 (Alaska 1990).

[25] *Id*. at 1336-37.

[26] *Id*. Furthermore, *Babinec* involved substantially different facts than the present case. Due to spinal damage resulting in permanent chronic pain that required ongoing medical treatment, the *Babinec* plaintiff had considerably more severe limitations on her activities: The chronic pain kept her from standing for substantial periods of time, forced her to spend most of her time in bed, and prevented her from resuming a number of regular activities, including marital relations. *Id*. at 1335-37.

[27] *Parnell v. Peak Oilfield Service Co.*, 174 P.3d 757, 764 (Alaska 2007) (quoting *Clary Ins. Agency v. Doyle*, 620 P.2d 194, 201 (Alaska 1980)).

constrained range of motion materially limited her daily life. Indeed, Marks testified she had learned to handle activities such as bathing, cleaning, and shopping by relying more on her right arm. Marks did not even explicitly mention loss of enjoyment of life in her closing argument. We thus conclude that the superior court, by rejecting Marks's proposed instruction on loss of enjoyment of life, did not deprive Marks of an instruction on her theory of the case adequately supported by the evidence.

Furthermore, even if the proposed instruction were consonant with Marks's theory of the case and had sufficient evidentiary support, the instructions delivered to the jury, taken "as a whole," did not allow the jury's verdict "to rest on an erroneous legal theory."[28] The jury instruction on non-economic damages closely followed ACPJI 20.06, properly mentioning loss of enjoyment of life alongside other categories of non-economic harms. Marks herself testified that she was still able to engage in many daily activities, albeit with modifications in order to rely less on her left arm, and admitted that there were no activities she had engaged in before her fall which she was no longer able to participate in. Given the considerable amount of evidence indicating that Marks was not suffering material limitations on her daily activities, the jury verdict awarding her no damages for future loss of enjoyment of life had a sound basis in the record. Therefore, any error in declining to include the proposed instruction would be harmless.

## V.   CONCLUSION

The superior court's jury instructions and its denial of a motion for a new trial are AFFIRMED.

---

[28]   *HDI-Gerling Am. Ins. Co. v. Carlile Transp. Sys., Inc.*, 426 P.3d 881, 887 (Alaska 2018).